## TROUTBROOK FARM, INC.

v.

## Mary DeWITT.

**No. 86–237 Appeal.**

Supreme Court of Rhode Island.

April 19, 1988.

William R. Grimm, Hinkley, Allen, Snyder & Coleman, Providence, for plaintiff.

Lauren E. Jones, Jones & Aisenberg, Providence, for defendant.

OPINION

WEISBERGER, Justice.

This case comes before us on appeal by the defendant, Mary DeWitt (DeWitt), from the denial of her motion to vacate a default judgment entered against her in the Superior Court. We remand for a reassessment of damages. The facts of the case insofar as pertinent to this appeal are as follows.

In 1976 DeWitt entered into a lease agreement with plaintiff, Troutbrook Farm, Inc. (Troutbrook), under which she leased a Morgan stallion, named Waseeka's In Command (stallion), for breeding purposes. At

---

that time the stallion was eleven years of age. In 1982 a controversy arose between DeWitt and Troutbrook concerning the manner in which the stallion's services were being managed by Troutbrook. DeWitt had been informed that the stallion was being used for artificial insemination. She believed that she had not received the share of breeding fees to which she was entitled.

As a result of this controversy, DeWitt filed an action in the Superior Court for Providence County. During the pendency of this action, by agreement of the parties the stallion was transferred for examination by a veterinary physician at Cornell University. The agreement provided that the stallion would be returned to Troutbrook after completion of the examination. The veterinarian found no explanation for the stallion's apparent reduction in fertility. However, after completion of the examination on November 7, 1983, DeWitt did not return the stallion but instead placed him in the custody of the management of a farm in Georgetown, New York.

Although DeWitt's action against Troutbrook was pending in the Superior Court and counsel for Troutbrook sought a continuance in order to file a "crossclaim" against DeWitt, a separate action was filed by Troutbrook's counsel on January 17, 1984. This action originally was based upon the claim that DeWitt's failure to return the stallion violated the agreement of the parties made October 11, 1983, to allow the examination at Cornell.[1] An ex parte restraining order was issued by the court, requiring the return of the stallion upon posting of a bond with corporate surety by Troutbrook in the sum of $100,000. The complaint, a supporting affidavit, and the restraining order were served upon DeWitt together with a summons requiring her to answer within twenty days. The summons was served upon DeWitt in Scranton, Pennsylvania. DeWitt turned these documents over to her attorney in Pennsylvania, but no answer to this action was filed. On February 24, 1984, the temporary restraining order was superseded by a preliminary injunction after a hearing at which DeWitt did not appear. DeWitt was ordered to return the stallion, and said order was served on DeWitt by a deputy sheriff in Connecticut. She did not return the stallion to Troutbrook Farm.

On March 20, 1984, Troutbrook filed a motion to adjudge DeWitt in contempt and also a motion to consolidate the prior pending action with the later action brought by Troutbrook. In addition, Troutbrook filed an amended complaint that sought damages in the amount of $300,000. Notice of the various motions and the amended complaint was served on DeWitt in Pennsylvania by a disinterested person.

On March 28, 1984, the motions were heard. The motion to consolidate the case was denied in light of the objection of DeWitt's counsel. A Superior Court justice adjudged DeWitt in contempt of the order issued on February 24, 1984, and a fine in the amount of $175 per day was assessed until such time as DeWitt complied with the earlier order.

In light of the fact that DeWitt did not file an answer, Troutbrook successfully moved for entry of default and thereafter obtained a hearing on proof of claim. On the basis of expert testimony presented by Leo Picard, the principal officer of Troutbrook, the trial justice entered judgment in the amount of $662,300. After the addition of interest and costs, this judgment totaled $721,955 and execution was issued in that amount.

After service of an execution upon DeWitt, actions of debt on judgment were commenced by Troutbrook in New York,

---

1. DeWitt argues that Troutbrook's action was a compulsory counterclaim within the definition of Rule 13(a) of the Superior Court Rules of Civil Procedure. Assuming, without deciding, that this argument may have some merit, we are of the opinion that it should have been raised by way of a defense to Troutbrook's action. It would not so vitiate the subject-matter jurisdiction of the Superior Court as to make a default judgment entered by that court subject to collateral attack. *See La Petite Auberge, Inc. v. Rhode Island Commission for Human Rights,* 419 A.2d 274 (R.I. 1980); *Borozny v. Paine,* 122 R.I. 701, 411 A.2d 304 (1980); *Hartt v. Hartt,* 121 R.I. 220, 397 A.2d 518 (1979).

Pennsylvania and Massachusetts. In Rhode Island, Troutbrook levied execution upon two mares owned by DeWitt that were located at Troutbrook Farm. On March 21, 1985, DeWitt filed a motion to vacate the default judgment. In support of this motion, DeWitt filed an affidavit asserting that she had been confused by the documents served upon her and believed that they were all part of the original action. After the filing of additional affidavits a hearing was held by a justice of the Superior Court, and ultimately the motion to vacate was denied. The trial justice specifically found that DeWitt had failed to establish excusable neglect and also failed to establish a meritorious defense to the action. DeWitt appealed from the order denying her motion to vacate the judgment.

It is apparent beyond a doubt that the amended complaint to Troutbrook's action sought money damages in the amount of $300,000. It is also apparent that the judgment entered in the Superior Court exceeded twice that amount. Rule 54(c) of the Superior Court Rules of Civil Procedure specifically provides that "[a] judgment by default shall not be different in kind from or exceed in amount that prayed for in the demand for judgment." It is suggested in 10 Wright, Miller & Kane, *Federal Practice and Procedure: Civil* 2d § 2663 at 139–42 (1983), that a judgment in a defaulted case that awards relief that is either more than or different in kind from that requested originally is null and void, and a defendant may attack it collaterally in another proceeding. There is, however, a split of authority concerning the effect of exceeding the demand for judgment in the award of damages in a defaulted action. Some courts have applied the rule that a default judgment that exceeds the amount of the demand for judgment is null and void. *Continental Casualty Co. v. Barlar*, 55 Ala. App. 441, 316 So. 2d 690 (1975); *Southern Arizona School for Boys, Inc. v. Chery*, 119 Ariz. 277, 580 P.2d 738 (1978); *Linker v. Batavian National Bank*, 271 Wis. 484, 74 N.W. 2d 179 (1956). Other courts have applied a different remedy and have reduced the amount of the default judgment to a sum equal to that set forth

in the demand for judgment. *Fehlhaber v. Fehlhaber*, 681 F.2d 1015 (5th Cir. 1982) (applying California law).

We are of the opinion that the better view is to regard a default judgment that exceeds the amount of demand for judgment to be null and void in its entirety. In the case at bar this matter was raised before this court for the first time. The trial justice was not given an opportunity to reassess damages in light of the fact that the judgment exceeded the amount set forth in the complaint. In view of the size of this judgment, we believe that justice will best be served if the matter is remanded to the trial justice for a reassessment of damages; either within the amount set forth in the demand or, as the Arizona Court allowed in *Southern Arizona School for Boys, Inc. v. Chery*, Troutbrook may be permitted (if it chooses) to amend the complaint—but then DeWitt should have an opportunity to answer the same. Such an amendment would in effect eliminate the default.

In the event that Troutbrook does not seek to amend, the trial justice should redetermine the damages within the limit set forth in the demand for judgment, but DeWitt should be permitted to participate in the hearing on assessment of damages, including the right to crossexamine witnesses and to present evidence on the issue of damages. Since the trial justice has found as a fact that there was no excusable neglect, this court will not disturb her determination in respect to the removal of the default. *Phoenix Construction Co. v. Hanson*, 491 A.2d 330 (R.I. 1985); *Friendly Home, Inc. v. Shareholders and Creditors of Royal Homestead Land Co.*, 477 A.2d 934 (R.I. 1984); *Vitale v. Elliott*, 120 R.I. 328, 387 A.2d 1379 (1978); *Prudential Investment Corp. v. Porcaro*, 115 R.I. 117, 341 A.2d 720 (1975).

In the case at bar ample evidence existed to support the trial justice's finding that DeWitt's persistent failure to respond to Troutbrook's complaint, injunctive orders issued by the court, and notices of amendment did not result from excusable neglect. We also recognize the right of the trial

justice to impose sanctions upon DeWitt for her failure to obey prior orders of the Superior Court. However, this may be done as part of the reassessment of damages upon remand.

For the reasons stated, DeWitt's appeal is sustained in part and denied in part. The papers in the case may be remanded to the Superior Court for reassessment of damages.