Earl H. WEBSTER

v.

Louis A. PERROTTA et al.

Stephen J. Riccitelli

v.

Louis A. Perrotta et al.

Vincent J. Ferrante, Sr.

v.

Town of Johnston et al.

Ruth V. Bolton

v.

Louis A. Perrotta et al.

No. 2000–333–Appeal.

Supreme Court of Rhode Island.

June 27, 2001.

Stephen C. Mackie, John T. Longo, Providence, for Plaintiff.

Matthew T. Oliverio, John M. Verdecchia, Providence, for Defendant.

Present: WILLIAMS, C.J., LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

GOLDBERG, Justice.

These consolidated cases came before the Supreme Court on May 7, 2001, on appeal from default judgments entered in the Superior Court in favor of Earl H. Webster (Webster), Ruth V. Bolton (Bolton)[1], Stephen J. Riccitelli (Riccitelli), and Vincent J. Ferranti, Sr. (Ferranti or plaintiffs) and against the Town of Johnston (defendant or town).[2] Specifically, the town has appealed the imposition of a monetary judgment made after the default of defendant in this case.

1. Ruth V. Bolton is the widow of former Johnston Police Officer Russell R. Bolton, and is seeking to recover benefits as such.

2. Although there are various present and former officials named as defendants in their official capacity, we shall refer to them collectively as defendant or town.

3. The illnesses or injuries suffered by the plaintiffs in this case are separate and are not the result of one incident or event. The cases were consolidated because of the similarity in their claims.

4. General Laws 1956 § 45-19-1, entitled "Salary payment during line of duty illness or injury," provides in pertinent part:
 "(a) Whenever any police officer, fire fighter, crash rescue crewperson, fire marshal, chief deputy fire marshal, or deputy fire marshal of any city, town, fire district, or the state of Rhode Island is wholly or partially incapacitated by reason of injuries received or sickness contracted in the performance of his or her duties, the respective city, town, or fire district, or state of Rhode

## Facts and Travel

The plaintiffs are former officers of the Johnston Police Department who sought wages and benefits, including any cost of living increases, wage increases, uniform allowances and similar benefits, and interests and costs from the date of their respective retirements to the present. It is undisputed that plaintiffs were employed as police officers for the town. Each plaintiff retired from the force because of an illness or injury alleged in the complaint to have been suffered or contracted in the line of duty.[3] At the time each plaintiff retired, a valid and enforceable provision of their respective union contract provided that "[a]ll members of the [p]olice [d]epartment who are injured or contact [sic] illness in the line of duty shall receive benefits in conformity with" G.L.1956 § 45-19-1, often referred to as the Injured on Duty (IOD) provision.[4] The plaintiffs all voluntarily retired, in some cases left

Island by which the police officer, fire fighter, crash rescue crewperson, fire marshal, chief deputy fire marshal, or deputy fire marshal is employed, shall, during the period of the incapacity, pay the police officer, fire fighter, crash rescue crewperson, fire marshal, chief deputy fire marshal, or deputy fire marshal, the salary or wage and benefits to which the police officer, fire fighter, crash rescue crewperson, fire marshal, chief deputy fire marshal, or deputy fire marshal, would be entitled had he or she not been incapacitated, and shall pay the medical, surgical, dental, optical, or other attendance, or treatment, nurses, and hospital services, medicines, crutches, and apparatus for the necessary period, except that if any city, town, fire district, or the state of Rhode Island provides the police officer, fire fighter, crash rescue crewperson, fire marshal, chief deputy fire marshal, or deputy fire marshal, with insurance coverage for the related treatment, services, or equipment, then the city, town, fire district, or the state of Rhode Island is only obligated to pay the difference between the maxi-

employment over three decades ago, and have received pension payments from the town since the date of their retirement. These pension amounts are less than 100 percent of the salary, wages, and benefits plaintiffs would have received had they not retired but remained as police officers. Further, by the fact of the default, it is not contested that the injuries or illnesses contracted by the plaintiffs were suffered in the line of duty and necessitated their retirements.

In 1997, three plaintiffs sued the town, through the named defendants, seeking recovery for the salary, wages, and benefits, including uniform stipends and dry cleaning expenses, that they alleged the town owed to them pursuant to G.L.1956 § 45-19-1. The fourth plaintiff claimed he was owed the same compensation, but his claim was based on the collective bargaining agreement.[5] The town's performance with respect to these lawsuits was less than satisfactory and led to the default judgments. The plaintiffs served the town with requests for admissions, requests for production of documents and interrogatories. The defendant never answered any of these requests, at which time plaintiffs filed motions to compel. No objections to these motions were made and accordingly, they were granted in the Superior Court. Conditional orders of default were subsequently issued in each of the four cases

pursuant to Rule 37 of the Superior Court Rules of Civil Procedure. Because the town continued to ignore the requests and subsequent orders to compel discovery, default judgments were entered in each of these cases by two justices of the Superior Court.[6] However, each judgment was entitled "Final Judgment" and proceeded to set forth not only the liability of the town but also included a mandate that the town

"shall immediately begin to pay [each plaintiff] each month, and continue to pay him until his death, 100% of the salary and benefits, including longevity, holiday pay, clothing allowances and maintenance allowances, he would have received each month if he were to receive a salary and benefits equal to that of [an officer] on the Johnston Police Department."[7]

Each of the judgments entered also provided that the "matter shall be scheduled for a proof of claim hearing to determine only the issue of the amount of money the [Town] owes the plaintiff." Significantly, neither the complaints nor the "Final Judgments" included a claim or finding that these plaintiffs, from the time of their voluntary retirements, remained active members of the police department.

Three judgments were entered by a justice of the Superior Court on June 3, 1999, and the fourth judgment was entered on July 8, 1999, by a second hearing justice

mum amount allowable under the insurance coverage and the actual cost of the treatment, service, or equipment. In addition, the cities, towns, fire districts, or the state of Rhode Island shall pay all similar expenses incurred by a member who has been placed on a disability pension and suffers a recurrence of the injury or illness that dictated his or her disability retirement."

5. Although these four cases were consolidated after the entry of judgments by default, the claim of plaintiff Ferrante differs markedly

from the remaining plaintiffs and will be treated separately.

6. Although the judgments were almost identical, there were four separate cases at the trial level and the judgments were entered by two different justices of the Superior Court.

7. The judgment in Ruth Bolton's case differs from those of the other plaintiffs because she was receiving widow's benefits and not retirement benefits. The town was ordered to pay her 67.5 percent of her late husband's salary and benefits as opposed to 100 percent.

who also heard the initial motions to vacate the judgments.[8] Shortly after their entry, the town sought to vacate these "Final Judgments" on the ground of excusable neglect. Motions to vacate were filed on June 21, 1999 and heard and denied on July 14, 1999, and were limited to the reasons set forth in Rule 60(b)(1) of the Superior Court Rules of Civil Procedure, "mistake, inadvertence, surprise, or excusable neglect." These motions were denied by the initial hearing justice who declared:

> "Well, I am searching, but I can find absolutely no reason to vacate this prior entry of judgment.
>
> * * *
>
> "I have not seen any justification for failures with regard to discovery. * * * There has been no evidence submitted to the [c]ourt of a meritorious defense, nor has any investigation been undertaken to mount one."

Consolidated oral proof of claim hearings were held before yet a third justice of the Superior Court, wherein the town moved, on grounds distinct from the initial motion to vacate, that the judgments be vacated or modified to comport with the provisions of § 45–19–1 and the pronouncements of this Court. The town sought relief from the judgments pursuant to Rule 60(b)(4), (5) and (6).[9] Although the hearing justice failed to address the specific grounds for relief sought by the plaintiff, in a written decision he expressed concern that he was asked to vacate or modify prior orders of other justices of the Superior Court designated as "Final Judgments," and a subsequent order of one of the justices "declining to vacate any of said Final Judgments." The hearing justice found that defendants failed to satisfy the burden imposed on them by Rule 60(b)(1)-(6). Moreover, he found that the law of the case precluded him from "second guessing" other justices of the Superior Court with respect to legal determinations made by them.

The hearing justice next dealt with the proof of claim issue. Specifically, he set out to decide what salary and benefits the police officers would have been entitled to had they not been incapacitated and presumably remained as active members of the police department. He rejected the town's argument that attacked the language in the judgments and the town's suggestion that the computation of dam-

---

8. Apparently, there was never a hearing with respect to the initial motion to vacate the judgment in *Ferrante v. Town of Johnston.*

9. Rule 60(b) of the Superior Court Rules of Civil Procedure, entitled "Relief from judgment or order" provides in pertinent part:
 "(b) *Mistake; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, etc.* On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken. A motion under this subdivision (b) does not affect the finality of a judgment or suspend its operation. This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding, or to set aside a judgment for fraud upon the court."

ages in this case requires a thorough and detailed analysis of the scope and purposes behind § 45–19–1 and the pronouncements of this Court. The town argued that notwithstanding the default in this case and the fact that the town was admittedly:

"foreclosed from arguing to the [c]ourt on the merits that these individuals were not injured in the line of duty, that they may not still be disabled; and we are foreclosed, your honor from arguing certain defenses * * *. [The town was not] 'precluded from arguing the proper statutory interpretation of 45–19–1 and how damages should be calculated under that statutory scheme as it relates to disabled retirees, or whether the intent of the legislature [sic] is to pay disabled retirees 100 percent of active pay forever and evermore.' "

The hearing justice failed to address this argument, apparently concerned about the law of the case and persuaded that the language of the "Final Judgments" was controlling, he rejected the town's argument that reference must be made to subsection (b) of § 45–19–1 that defines a police officer as any "member of the police department of any city or town regularly employed at a fixed salary or wage." He then declared that, pursuant to § 45–19–1, a police officer, during the period of incapacitation, is entitled to the salary or wage and benefits to which he would have been entitled, had he not been incapacitated. Therefore, with respect to the amount of the principal, he found that the provisions with respect to the calculation damages agreed upon in a previous stipulation to be controlling.[10] Lastly, the hearing justice denied plaintiffs' request for prejudgment interest, finding that the town was clearly

acting in a governmental, as opposed to a proprietary capacity. Therefore, he concluded prejudgment interest was not appropriate. Both parties have appealed.

The defendant has raised several issues on appeal and has assigned three grounds of error on the part of the trial justice in refusing to vacate or modify the judgments entered in this case. Specifically, defendant alleged that the judgments are void, that the judgments should have been vacated or modified because they improperly exceeded the scope of § 45–19–1 and are applied to individuals who no longer are active members of the department, contrary to the previous pronouncements of this Court and the intent of the Legislature. Further, the town maintained that the hearing justice should have granted the town's motions to vacate or modify the judgments because the judgments were based on an incorrect conclusion of law and an erroneous interpretation of *Chester v. aRusso*, 667 A.2d 519 (R.I.1995). Finally, defendants have also urged this Court to revisit its holding in *Chester* and clarify whether that case is applicable to a voluntary retirement. Alternatively, the town argued that the hearing justice erred by failing to conclude that the proper measure of damages at the hearing on oral proof of claim was controlled by the language of § 45–19–1 and the previous pronouncements of the Court, and not in the context of the "Final Judgments." In its cross-appeal the plaintiffs have challenged the denial of prejudgment interest on the ground that the town's liability to plaintiffs arose out of a contract action; thus the refusal to impose prejudgment interest was error.

---

**10.** In consideration of dispensing with the testimony of expert witnesses presented by the parties concerning the appropriate calculation of damages, the parties entered into a stipulation, assuming that the court did not vacate or modify any portion of the judgments that had been previously entered, whereby the parties agreed to a certain calculation of damages if the court adopted all of the theories and calculations advanced by plaintiffs.

## Standard of Review

■■■■ The denial of a motion to vacate or modify a judgment is within the sound discretion of the trial justice and will not be reversed on appeal absent a showing of abuse of discretion or other error of law. *See Iddings v. McBurney,* 657 A.2d 550, 553 (R.I.1995). Further with respect to the measure of damages in the context of a hearing on oral proof of claim, questions of law and statutory interpretation are reviewed *de novo* by this Court. *See Rhode Island Depositors Economic Protection Corp. v. Bowen Court Associates,* 763 A.2d 1005, 1007 (R.I.2001). In matters of statutory interpretation our ultimate goal is to give effect to the purpose of the act as intended by the Legislature. *See Matter of Falstaff Brewing Corp. Re: Narragansett Brewery Fire,* 637 A.2d 1047, 1050 (R.I.1994).

## Discussion

■■■■ We note at the outset that the argument advanced by the plaintiffs that the town failed to appeal the entry of "Final Judgments" by the various justices of the Superior Court on a timely basis and is therefore precluded from prosecuting this appeal is without merit. Although labeled final, the judgments entered upon the default of the defendant were merely that, judgments by default that served to conclusively establish the liability of the defendants as it related to the allegations in the complaints and nothing else. The judgments were neither final nor appealable at that juncture. An appeal may be taken to this Court "only from a final judgment, decree, or order of the Superior Court" that terminates the controversy. *Pearson v. Old Stone Sav. Bank,* 119 R.I. 836, 838, 383 A.2d 1029, 1030 (1978). By the terms set forth in the judgments, the litigation was not terminated and the case was ordered to a hearing on plaintiffs' oral proof of claim. Accordingly, we reject the contention that this case is not properly before us. Moreover, for the reasons set forth herein the only portion of these "Final Judgments" that we deem valid and enforceable is paragraph one, which provides, "Judgment shall enter for the Plaintiff on the issue of liability in this matter on all counts." We deem all language that purports to set forth the measure of damages and includes a specific mandate that the town shall "immediately begin to pay [plaintiff]" each month and "continue to pay until his death, 100%" of an officer's salary and benefits to be a nullity and therefore void. We are satisfied, however, that to the extent the judgments conclusively establish the liability of the town with respect to the allegations contained in the various complaints, the judgments are valid; there being no question that the parties were served and were properly before the Superior Court. *See Reynaud v. Koszela,* 473 A.2d 281 (R.I.1984); *and see Video Products Distributors, Inc. v. Kilsey,* 682 A.2d 1381 (R.I.1996). Nor is there a suggestion that the court lacked subject matter jurisdiction. *See State of Maryland Central Collection Unit v. Board of Regents for Education of the University of Rhode Island,* 529 A.2d 144 (R.I.1987); *see also F.G.C. International (USA) v. Ann and Hope, Inc.,* 714 A.2d 608 (R.I.1998) (mem.).

## Default Judgments

■■■ We turn now to the central issue before us. What is the effect of the judgments by default entered in this case and what is the measure of damages? It is well established in this jurisdiction that a default does not concede the amount of damages, nor may a default judgment include the measure of damages for which the defaulting party is liable unless, pursuant to Super.R.Civ.P. 55(b)(1), the damages are "for a sum certain or for a sum

which can by computation be made certain," a situation not relevant to this controversy.[11] Rule 54(c) of the Superior Court Rules of Civil Procedure provides in pertinent part:

"**Judgment—Costs.—**

\* \* \*

(c) *Demand for Judgment.* A judgment by default shall not be different in kind from or exceed in amount that prayed for in the demand for judgment. *Except as to a party against whom a judgment is entered by default,* every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled even if the party has not demanded such relief in the party's pleadings." (Emphasis added.)

In *Troutbrook Farm, Inc. v. DeWitt,* 540 A.2d 18 (R.I.1988), faced with a default judgment that was twice the amount of the demand, we held that a default judgment that exceeds the amount claimed in the demand for judgment to be null and void in its entirety. Further, although we recognized the existence of a split of authority concerning the effect of damages that exceeded the demand for judgment in a defaulted action; noting that while that some courts consider it null and void, "[o]ther courts have applied a different remedy and have reduced the amount of the default judgment to a sum equal to that set forth in the demand for judgment," we recognized that was not the case where the relief awarded is "more than or different in kind." *Id.* at 20 (citing 10 Wright, Miller & Kane, *Federal Practice and Procedure:* Civil 2d § 2663 at 139–42 (1983)). Additionally, we declared that

"a judgment in a defaulted case that awards relief that is either more than or different in kind from that requested originally is null and void, and a defendant may attack it collaterally in another proceeding." *Id.*

 It is the law in this state that "[a]lthough the factual allegations of a complaint will be taken as true upon default, those allegations relating to the amount of damages suffered generally are

---

**11.** Although we recognize, as the dissent points out, that the *sanctions* imposed against the defendant in these cases were the result of discovery violations and that Rule 37 of the Superior Court Rules of Civil Procedure permits the court to "make such orders and enter such judgment in regard to the failure or refusal as are just," we are satisfied that Rule 37 is of no moment to this appeal. The orders that were entered in this case, *pursuant to Rule 37,* were in fact conditional default judgments and not final judgments. The "Conditional Default Judgment[s]" entered in favor of plaintiffs Ferrante and Webster provide for default judgments *"on the issue of liability * * *."* (Emphasis added.) The "Conditional Order" entered in favor of plaintiff Bolton merely provides for the entry of a "30 day conditional order" and makes no reference to a judgment of any kind. The "Conditional Order" in favor of plaintiff Riccitelli merely recited that "a [d]efault judgment shall issue for the [p]laintiff if the [d]efendants fail to answer the interrogatories within 30 Days." Accordingly, the judgments entered in this case were, by their very terms, default judgments that conclusively established the liability of the defendant. Obviously, in imposing a discovery sanction pursuant to Rule 37, a hearing justice is free to enter such orders that are just under the circumstances, in this case, however, no justice was asked to do anything except enter "Conditional Default Judgments" on the issue of liability and no justice was asked, pursuant to Rule 37 or otherwise, to enter a final judgment. Finally, were the dissent's position that these are truly final judgments to carry the day, then this appeal is not appropriately before this Court. Although the town moved to vacate the "Final Judgments" shortly after they were entered, it did not file a timely appeal pursuant to Article I, Rule 4 of the Supreme Court Rules of Appellate Procedure of either the judgments themselves or the first decisions denying the motion to vacate the judgments.

not." *Bashforth v. Zampini,* 576 A.2d 1197, 1200 (R.I.1990). Moreover, a "[j]udgment by default may be granted only for such relief as may lawfully be granted upon the well-pleaded facts alleged in the complaint." *Patray v. Northwest Publishing, Inc.,* 931 F.Supp. 865, 869 (S.D.Ga.1996) (quoting 6 *Moore's Federal Practice* § 55.02(2) at 55–20). Significantly, in *Bashforth,* we declared that a defaulted defendant had a right to conduct discovery to "determine whether plaintiff's extensive medical treatments are causally related to [the incident giving rise to the default judgment] * * *." *Bashforth,* 576 A.2d at 1200; *see also Calise v. Hidden Valley Condominium Association, Inc.,* 773 A.2d 834, at 837–38 (R.I.2001) (this Court adheres to the majority rule that precludes a defaulted defendant from attempting to mitigate its damages by introducing evidence of the comparative negligence of settling tort-feasors who are no longer before the court). We are not persuaded that the so-called "Final Judgments" entered upon the default of the town were conclusive of anything beyond the allegations of fact pleaded in the various complaints. Certainly a party's default "is deemed to constitute a concession of all well pleaded allegations of liability, [however] it is not considered an admission of damages." *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.,* 973 F.2d 155, 158 (2nd Cir.1992). A default judgment does not give plaintiff "a blank check to recover from [defendant] any losses it had ever suffered from whatever source." *Id.* at 159 (quoting *Trans World Airlines, Inc., v. Hughes,* 449 F.2d 51, 70 (2nd Cir. 1971), *rev'd on other grounds,* 409 U.S. 363, 93 S.Ct. 647, 34 L.Ed.2d 577 (1973)). Even in the face of a default, the plaintiff has the burden of establishing the limits of recovery according to the liability that is conceded by the default. Just as a default does not give the plaintiff carte blanche to recover for every harm ever sustained, a default does not in itself permit recovery for matters not addressed in the complaint or allow recovery unless there is a sufficient basis contained in the pleadings to support the judgment sought to be entered. *Greyhound Exhibitgroup, Inc.,* 973 F.2d at 159; *see also Nishimatsu Construction Co., Ltd., v. Houston National Bank,* 515 F.2d 1200 (5th Cir.1975).

"As the Supreme Court stated in the 'venerable but still definitive case' of *Thomson v. Wooster:* a default judgment may be lawfully entered only 'according to what is proper to be decreed upon the statements of the bill, assumed to be true' and not 'as of course according to the prayer of the bill.'" *Nishimatsu Construction Co., Ltd.,* 515 F.2d at 1206 (quoting *Thomson v. Wooster,* 114 U.S. 104, 113, 5 S.Ct. 788, 792, 29 L.Ed. 105, 108 (1885)).

Thus, although a plaintiff is relieved from the burden of establishing liability in a defaulted case he or she nonetheless bears the burden of establishing the damages he or she is legally entitled to recover.

 Moreover, conclusions of law set forth in the complaints are not deemed established by a default judgment. "The defendant is not held to admit facts that are not *well-pleaded* or to admit conclusions of law." *Nishimatsu Construction Co., Ltd.,* 515 F.2d at 1206. Although the defendant may not challenge the sufficiency of the evidence, the defendant may contest the sufficiency of the complaint and its allegations to support the judgment. *Id.*

 An examination of the complaints filed by these plaintiffs reveals that three complaints alleged that the named plaintiff "contracted an [injury or] illness in the performance of his duties as a police officer for the Town of Johnston" was de-

clared wholly incapacitated and "ceased the performance of his duties as a full-time police officer for the town."[12] The complaints further alleged that, *"pursuant to R.I.G.L. 45–19–1*, the Town of Johnston should be paying the Plaintiff the salary, wages and other benefits he would have been entitled to had he not been so incapacitated" and the defendants "have refused, and continue to refuse, to make the payments required by law." (Emphasis added.) A second count alleged that, at the time that the plaintiff ceased working as a full-time police officer, a collective bargaining agreement was in effect between the town and International Brotherhood of Police Officers Local 307, the bargaining unit for the rank and file officers, that provided in Article X, the section dealing with sick leave and not in Article XV, the section on retirement as follows:

"*All members of the police department* who are injured or contact [*sic*] illness in the line of duty shall receive benefits in conformity with the General Laws of the State of Rhode Island 45–19–1 amended." (Emphasis added.)

Finally, the third count contained an allegation that on November 30, 1995, this Court issued a decision, unidentified, that decided "the legal issue which forms the basis of the [p]laintiff's claim" and the defendant's refusal to recognize that decision constitutes bad faith. This allegation amounts to a conclusion of law that has no relevance in a default judgment and is therefore a nullity.

■ Significantly, the fourth complaint, filed by plaintiff Ferrante, makes no reference to § 45–19–1; makes no claim that the plaintiff was on IOD status and merely alleges that, prior to 1983, Ferrante was employed as a police officer for the defendant town and a member of Local 307; that the town has "failed to afford Plaintiff the benefits of a disability *retirement*, failed to appropriately calculate his *pension* entitlements and periodic increases, and has failed to provide Plaintiff with the medical and other benefits to which he is entitled." (Emphases added.) Accordingly, Ferrante's complaint is completely devoid of any allegations that would support the relief ordered in this case and has no relevance to § 45–19–1, or any purported IOD status. That fact was no deterrent to Ferrante, however, for the final judgment entered in Ferrante's case affords him identical relief to that of the remaining plaintiffs and bears no resemblance whatsoever to the allegations contained in his complaint. We deem this judgment to be null and void.[13] *See Troutbrook Farm, Inc. v. DeWitt*, 540 A.2d 18 (R.I.1988).

Here, the record demonstrates that although defendant was remiss in fulfilling its discovery obligations and has conceded the failings that led to the defaults, the town tried mightily to challenge the language in the judgments as having no relevance to the factual allegations in the complaint. The defendant valiantly sought to have the language modified to comport with the law as it relates to default judgments and urged the hearing justice to

12. The complaints filed by plaintiffs Bolton, Riccitelli, and Webster are identical. The plaintiff Ferrante's complaint alleged a breach of the terms of the collective bargaining agreement and failed to make a claim pursuant to § 45–19–1.

13. Even were we to uphold a portion of Ferrante's judgment, the complaint fails to set forth a claim for relief that passes muster and merely states that plaintiff "demands judgment against [d]efendants in an amount sufficient to satisfy the jurisdictional requirements of this [h]onorable [c]ourt." We have previously held that courts are especially hesitant to read a particular claim into a complaint's general boilerplate prayer for relief. *See Bandoni v. State*, 715 A.2d 580, 597 (R.I.1998).

award the plaintiffs only the amount of damages they were entitled to *"pursuant to § 45–19–1,"* exactly what was prayed for in the complaints. Having carefully reviewed the record of these proceedings, we are satisfied that the relief awarded in these judgments is not supported by the allegations in the pleadings and that the trial justice erred in refusing to set aside or modify what in actuality were merely default judgments and not final judgments. Further, having refused to grant the relief requested pursuant to Rule 60, it was incumbent upon the trial justice in the context of a hearing on oral proof of claim, to make an independent determination relative to plaintiffs' entitlement to the damages claimed in the complaint. We are satisfied that the trial justice erred in failing to examine the pleadings to determine whether plaintiffs are legally entitled to recover the relief awarded in this case and our own examination of the pleadings leads us to conclude that plaintiffs are not entitled to the relief awarded in the judgments.

## The Motions to Vacate

The record discloses that there were two motions to vacate the judgments filed and argued by successor counsel before two different justices of the Superior Court. The second motion to vacate was filed on December 15, 1999, and was heard on January 31 and February 22, 2000. The hearing justice issued a written decision on May 8, 2000, and denied the requested relief.

 During the hearing before the second hearing justice, defendants argued that the court should vacate or modify the judgments entered in this case because § 45–19–1, pursuant to which three plaintiffs asserted the right to relief, does not apply to retired police officers and, according to the established factual allegations in the complaints, each plaintiff was entitled to 100 percent of the salary and benefits he would have received while a member of the police department up to the date he retired. We agree with this argument and hold that this is the only remedy available to plaintiffs Webster, Riccitelli and Bolton. Significantly, the allegations in the complaints, accepted as true, are that these plaintiffs were injured on duty and rendered wholly incapacitated and ceased the performance of their duties as full-time police officers and, *"[p]ursuant to 45–19–1,* the Town of Johnston should be paying the salary, wages and other benefits [they] would have been entitled to had [they] not been so incapacitated." We therefore conclude that, according to the language contained in the complaints, the plaintiffs' entitlement to compensation is governed by § 45–19–1 and the previous pronouncements of this Court.

When the state workers' compensation statute was first enacted in 1912, police officers and firefighters were not excluded from it's provisions. However, they subsequently were excluded by the Legislature in 1917. *See Labbadia v. State,* 513 A.2d 18, 20 (R.I.1986); *and see* P.L.1912, ch. 831, art. 5, § 1. "In 1944 the precursor to § 45–19–1 was enacted [by the General Assembly in] P.L.1944, ch. 1479, which required cities and towns to pay police officers who were incapacitated during the course of performing their duties, their full salary for the duration of the incapacity." *Labbadia,* 513 A.2d at 20. The term "police officer" included in the original act and in each of the eleven successive amendments was defined as "any chief or other member of the police department of any city or town, *regularly employed* at a fixed salary or wage." [14] (Emphasis added.)

14. *See* P.L.1952, ch. 2915; P.L.1960, ch. 126; P.L.1972, ch. 212; P.L.1973, ch. 245; P.L.

The question of a police officer's entitlement to salary and benefits after an on-duty injury or illness pursuant to § 45–19–1 has been before this Court on a number of previous occasions. In *Labbadia*, we declared that § 45–19–1 is a substitute for workers' compensation and affords greater protection to injured police officers and firefighters than either the common law remedy or the state workers' compensation scheme and was intended by the Legislature to provide greater benefits to these public service employees. In *Kaya v. Partington*, 681 A.2d 256, 259 (R.I.1996), we were called upon to determine whether a police officer was entitled to maintain an action in tort for negligence against his municipal employer and we again distinguished the IOD statute from the state Workers' Compensation Act (WCA) and held that "[t]he IOD statute provides that any police officer in Rhode Island who is injured in the performance of his or her duties may recover the benefits under the statutory scheme," including payment of medical and related expenses for police officers. *Id.* at 258–59. Further, we noted that "all such *medical expenses* related to this injury will be covered if he or she *retires* in a disabled condition as a result of the injury and he or she suffers a recurrence of the injury" that led to the retirement. *Id.* at 259. (Emphasis added.) We have never held, nor do we hold today, that an on-duty injury or illness and a voluntary retirement amounts to a lifetime appointment to the police force or a lifetime pay check, including uniform allowances and other benefits. Section 45–19–1 is limited to police officers, firefighters and other public safety personnel who are actually employed when they suffer the disability and are paid the compensation provided by the IOD statute. We now hold in

clear and unambiguous language that § 45–19–1 is not a retirement act. It applies to a police officer or another enumerated individual who is "wholly or partially incapacitated by reason of injuries received or sickness contracted in the performance of his or her duties" and who is entitled to like compensation and benefits, *while he or she remains a member of the department.* We recognize that some officers may suffer career-ending injuries or illnesses. Although these officers may never return to active duty, as long as they are receiving benefits in accordance with § 45–19–1, similar to any other workers' compensation scheme, they remain employed by the department, are subject to its rules and regulations and may be required to undergo periodic examinations to determine whether the injury or illness is continuing. Officers who continue to collect paychecks from their respective departments pursuant to § 45–19–1 are employees of the municipality that is paying them full salary and benefits and are not free, as are retired officers, to undertake a second career or otherwise deviate from the rules of the department respecting outside employment. Further, as the statute contemplates, if an officer receiving compensation pursuant to § 45–19–1 elects to retire or reaches mandatory retirement age, he or she is entitled to reimbursement for non-covered medical expenses thereafter.

Over twenty years ago in the case of *Aiudi v. Pepin*, 417 A.2d 320 (R.I.1980), we held in clear and unequivocal terms that "[s]alary benefits become payable only if, at the time of the demand, the officer would have been eligible to receive a salary." *Id.* at 321. We declared that an officer who is no longer a member of the police department is not entitled to the

1975, ch. 154; P.L.1976, ch. 167; P.L.1984, ch. 333; P.L.1986, ch. 371; P.L.1987, ch. 527; P.L.1988, ch. 63; P.L.1988, ch. 329; P.L.1990, ch. 419.

benefits provided by § 45–19–1. *Aiudi*, 417 A.2d at 321. A judgment by default does not change the law in this jurisdiction nor does it transpose a police officer's voluntary retirement into active duty or IOD status.[15] This case is distinguishable from *Brissette v. Potter*, 560 A.2d 324 (R.I.1989), a case relied upon by plaintiffs. Brissette had been injured while responding to a domestic disturbance and began receiving benefits pursuant to § 45–19–1 until he was *terminated* from the force thirty-three months later. We reversed the decision of the trial justice that denied him continued benefits pursuant to the IOD statute and held that as a member of the department, Brissette was entitled to receive "the salary to which he would have been entitled had he not been so incapacitated." *Brissette*, 560 A.2d at 326. We were not called upon to reach the question of the effect, if any, of a *voluntary* retirement. Accordingly, we hold that § 45–19–1 is applicable to the public safety personnel enumerated in the statute who are "regularly employed at a fixed salary or wage" and does not include retirees of these departments.

 Nor are we satisfied that the liability respecting count 2 of the complaints is of any assistance to these plaintiffs. It has been conclusively established that each plaintiff was a member of the collective bargaining unit and that Article X, the section concerning sick leave of the collective bargaining agreement in effect at the time of their retirements provided that,

"*All members of the police department* who are injured or contact [*sic*] illness in the line of duty shall receive benefits in conformity with the General Laws of the State of Rhode Island, ( [§ ] 45–19–1) as amended. (Emphasis added.)

However, by its terms, this provision, consistent with the provisions of § 45–19–1, applies to those individuals who are *members of the police department* at the time they are injured or contract a job-related illness. *See Aiudi v. Pepin*, 417 A.2d 320 (R.I.1980). Thus this provision is of no assistance to the plaintiffs in this case.

The third theory of liability contained in plaintiffs complaints related to an unidentified opinion of this Court that "decid[ed] the legal issue which forms the basis of the Plaintiff[s'] claim[s]." A review of the record indicates that the plaintiffs relied upon *Chester* as support for their conclusion that a disability pension was somehow transmuted into active duty status for which decades of back pay are due and owing. They are incorrect; *Chester* bears little resemblance to the issues before this Court. In *Chester*, we were not asked to construe the meaning of § 45–19–1 or to decide whether the language of Article X of the collective bargaining agreement, the same language relied upon by plaintiffs herein that deals with sick leave and not retirement, is applicable to a voluntary retirement. In that decision the only issue we were called upon to decide was whether the inclusion of the aforementioned provision in the town's collective bargaining agreement superseded a special Act of the General Assembly. We held that, when there exists "a valid and an enforceable

---

15. Not only did these plaintiffs demand full salary since the date of their retirements, but they also demanded the various contractual benefits, including clothing allowances and maintenance allowances for uniforms they did not wear for decades and compensation for decades of holidays they spent, at home, with their families. Contrary to the assertion at oral argument that plaintiffs were constrained by the language of the statute to include this in their claims, plaintiffs argued in Superior Court that these benefits were negotiated perks in the contract that were "not intended to compensate the officer * * * for the uniforms. It's just an additional perk" that these long-retired public servants were entitled to recover.

collective-bargaining agreement whose terms provide greater disability benefits than is afforded by the special legislation," *Chester*, 667 A.2d at 521, the provision of the collective bargaining agreement takes precedence over the special act. We were not called upon to decide, and indeed never addressed, the meaning of these provisions or their applicability to long-retired officers. We merely held that "the [T]own of Johnston properly entered into an agreement whose terms provide greater disability benefits to the [T]own of Johnston *police officers.*" *Id.* at 522. (Emphasis added.) Although the plaintiffs' conclusions of law contained in the complaints are not deemed admitted by the default, *Nishimatsu Construction Co., Ltd.,* and, like all questions of law, are reserved to the Court, *Chester* is a decision involving accepted principles of statutory construction in which our task was to effectuate the intent of the Legislature. *See Chester v. aRusso,* 667 A.2d 519 (R.I.1995); *see also Matter of Falstaff Brewing,* 637 A.2d at 1049–50. It has no bearing on the question of plaintiffs' entitlement to damages. To the extent that *Chester* holds otherwise, we specifically overrule it.

▐ Accordingly, we are satisfied that plaintiffs Webster, Bolton, and Riccitelli, who claimed compensation pursuant to the provisions of § 45–19–1, are entitled to receive compensation from the town for all periods during which they were actively employed and were entitled to a paycheck. *Aiudi v. Pepin,* 417 A.2d 320 (R.I.1980). Each plaintiff is owed 100 percent of the salary and benefits he was receiving up to the date of his voluntary retirement. These cases are remanded for a new determination of damages in accordance with this decision.

The judgment for plaintiff Ferrante, who made no claim under § 45–19–1, but who contended that the town failed to afford him "the benefits of a disability retirement" and "failed to appropriately calculate his pension entitlements and periodic increases," including medical benefits and periodic pension increases and proceeded to make a general, boilerplate demand for relief is vacated in its entirety.

## Prejudgment Interest

▐ The trial justice declined to award prejudgment interest to the plaintiffs in this case, reasoning that "prejudgment interest may be awarded against a municipality on a breach of contract claim where the municipality acts in a proprietary or enterprise capacity * * *." He found that there "can be no question that with respect to compensation to police officers under the provisions of [§ ] 45–19–1, the Town is acting in a governmental, as opposed to enterprise or proprietary, manner." We agree with this holding and conclude that the compensation of police officers pursuant to § 45–19–1 is a governmental function. Further, we note that no plaintiff has alleged that he is currently a member of the police department, or a member of the collective bargaining unit and therefore could not pursue a claim through the grievance procedure of the collective bargaining agreement. This situation is markedly different from the case relied upon by the plaintiffs, *North Smithfield Teachers Association v. North Smithfield School Committee,* 461 A.2d 930 (R.I. 1983), in which the Town of North Smithfield, having refused to abide by the collective bargaining agreement, an arbitrator's award and a subsequent consent agreement appealed a judgment of the Superior Court that declared that the teachers were entitled to be compensated in accordance with the collective bargaining agreement. The issue in that case concerned a breach of contract, and accordingly, we found that prejudgment interest should have been

awarded in accordance with G.L.1956 § 9–21–10.

 The exercise of police power is a purely governmental function. In *Connelly v. Retirement Board of Providence*, 633 A.2d 1352 (R.I.1993) (mem.), we held that a firefighter who obtained a determination that he was entitled to receive accidental disability retirement benefits as opposed to a regular pension, was not entitled to prejudgment interest on the underpaid amounts, concluding that § 9–21–10 was not applicable to an award of disability benefits. Finally, although the collective bargaining agreement contained a provision setting forth that injured officers are entitled to salary and benefits pursuant to § 45–19–1, these cases were not brought pursuant to the collective bargaining agreement; nor does that agreement set forth any additional rights.

## Conclusion

For the reasons articulated herein, we sustain the appeal of the defendant, Town of Johnston, vacate those portions of the judgments of plaintiffs Webster, Bolton and Riccitelli that awarded damages, and remand this case to the Superior Court for a new hearing in accordance with this decision, relative to any damages to which the plaintiffs may be entitled. The judgment obtained by plaintiff Ferrante is vacated in its entirety and the case is remanded for trial. We deny and dismiss the appeal of the plaintiffs from the denial of prejudgment interest. The papers in this case may be remanded to the Superior Court.

FLANDERS, Justice, dissenting.

I respectfully dissent. The grounds for my disagreement with the majority are as follows:

(1) *Rule 37 of the Superior Court Rules of Civil Procedure, not Rule 55, is the operative rule governing the judgments that entered in this case.* Applying Rule 55, the majority declares that the "final judgments" that entered in this case as sanctions for the town's noncompliance with the court's orders concerning plaintiffs' discovery demands were void to the extent that they purported to award the relief that plaintiffs had requested in the complaints, and to the extent they included a specific mandate for the town to begin paying plaintiffs 100 percent of a town police officer's current salary and benefits. But "'[a] judgment is not void merely because it is erroneous.'" *Allstate Insurance Co. v. Lombardi*, 773 A.2d 864, at 869 (R.I.2001). Moreover, the basis for the majority's conclusion is its belief that, under Rule 55, the entry of a default entitles a plaintiff only to a judgment for liability, but it is not considered an admission of damages. I believe, however, that this analysis is inappropriate for evaluating the judgments that entered in this case as a sanction for the town's violation of the court's discovery orders. Under Rule 37(b)(2), if a party "fails or refuses to obey an order to provide or permit discovery * * * the court may make such orders and *enter such judgment* in regard to the failure or refusal as are just * * *." (Emphasis added.) Thus, among the specific sanctions that the Superior Court may impose against a party who is guilty of failing to obey a discovery order is "a final judgment * * * rendering a judgment by default against the disobedient party." Super.R.Civ.P. 37(b)(2)(C). No prior entry of a default is required, nor is there any requirement that the judgment adjudicate only liability but not damages. As one commentator has noted with regard to the analogous federal rule:

> "Rule 37 is flexible. The court is directed to make such orders 'as are just' and is not limited in any case of disregard of the discovery rules or court

orders under them to a stereotyped response. The sanctions enumerated in the rule are not exclusive and arbitrary but flexible, selective, and plural." 8A Wright, Miller, & Marcus, *Federal Practice and Procedure*, § 2284 at 612 (1994).

Hence, "[w]ith a rule as flexible as Rule 37, inevitably a broad discretion must be given the trial judge with regard to sanctions." *Id.* at 614; *accord* 1 Kent, *R.I. Civ. Prac.*, § 37.1 at 304 (1969) ("Rule 37 arms the court with a wide variety of devices ranging from the very mild to the severe sanctions of dismissal and default, and it confers upon the court's broad discretion as to their use."). Moreover, in addition to allowing the entry of final judgments rendering a judgment by default against the disobedient party, Rule 37(b)(2)(A) also allows the court to enter "[a]n order that the matters regarding which the order was made, or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order." Further, pursuant to Rule 37(b)(2)(B), such a discovery-sanctions order can bar the disobedient party from supporting or opposing designated claims or defenses, and it can prohibit the "disobedient party from introducing designated matters in evidence."

Here, the final judgments that entered following defendants' persistent failure to obey the court's discovery orders were consistent with the Superior Court's broad discretion to fashion an appropriate remedy for such violations, and they were also perfectly consistent with the factual allegations and the theory of liability set forth in the complaints. The complaints alleged that plaintiffs had been police officers of the town who were disabled while they were employed and that their disabilities continued to the present. If those allegations were true, then plaintiffs would be entitled to the relief afforded them in the judgments unless some affirmative defense existed that would restrict or bar such relief. But Rule 37 authorized the court to enter a form of "final judgment" for defendants' discovery violations that precluded such affirmative defenses. Thus, I disagree with the majority's conclusion that any portion of these judgments was void or inappropriate or inconsistent with the type of sanctions that can be imposed upon the failure of a party to provide discovery as ordered by the court. In my judgment, Rule 55 simply does not apply in this situation. Rather, Rule 55 concerns defaults and default judgments that are entered after one party has failed to answer or to defend a lawsuit in a timely manner. But it does not apply to the judgments that entered here as a sanction for the town's discovery violations.

(2) *The refusal to vacate these judgments.* I also do not believe that the three different Superior Court justices who were involved in this matter abused their discretion either in entering the discovery-sanctions judgments or in refusing to vacate them. A review of the record indicates that, in three of the cases below, the defendants failed to submit any objection whatsoever to the final judgments that plaintiffs proposed as sanctions for defendants' violation of the court's discovery orders. Although defendants did object to the proposed "final judgment" in the action brought by Stephen Riccitelli, the objection only included assertions that the town's failure to comply with discovery orders resulted from clerical errors that amounted to excusable neglect. In sum, when plaintiffs moved the court to enter these judgments as sanctions for the town's discovery violations, defendants never objected by raising any of the grounds that they now assert on appeal as reasons to vacate the judgments and over-

turn the Superior Court's Rule 60 determinations. As a result, these arguments have been waived. Moreover, defendants simply were unable to demonstrate any excusable neglect after their repeated failure to comply with the court's discovery orders. In an appeal from an order denying a motion to vacate under Rule 60(b) of the Superior Court Rules of Civil Procedure, this Court reviews only the correctness of that order, but not issues concerning the correctness of the judgment sought to be vacated. *See Astors' Beechwood v. People Coal Co.*, 659 A.2d 1109, 1115 (R.I. 1995); *Pari v. Pari*, 558 A.2d 632, 634 (R.I.1989).

(3) *Law of the case doctrine.* With respect to plaintiffs Webster, Bolton, and Ferrante, I do not believe they should have been allowed to bring successive motions to vacate the judgment, even on grounds not initially raised, after the first Superior Court justice denied their initial motion to vacate. Otherwise, litigants will be encouraged to bring multiple motions to vacate judgments; trying one motion justice after another—and one argument after another—until they find one that is amenable to their client's position. The law-of-the-case doctrine should have precluded reconsideration of the earlier denial of the motions to vacate. *Ferguson v. Marshall Contractors, Inc.*, 745 A.2d 147, 151 (R.I.2000) ("The law-of-the-case doctrine 'states that ordinarily, after a judge has decided an interlocutory matter in a pending suit, a second judge, confronted at a later stage of the suit with the same question in the identical manner, should refrain from disturbing the first ruling.'"). Thus, I concur with the decisions of the two Superior Court justices who refused to vacate the judgments.

(4) *The judgments entered under Rule 37 properly barred defendants from arguing the propriety of awarding injured-on-duty benefits to incapacitated police officers who have voluntarily retired.* For the reasons previously indicated, I do not believe that the legal merit of the judgments that entered in this case is even properly before us. Nevertheless, even if we were able to reach this issue, the theory of liability in plaintiffs' complaints was that they were entitled to damages based upon the town's failure to pay their full salary and other benefits as provided for in G.L.1956 § 45-19-1 and in the applicable collective-bargaining agreement. The complaints alleged that they were injured on duty and remained incapacitated as of the time they sought relief from the town via their complaints. Although their voluntary retirement from the police force after their incapacitating injury may or may not have been a valid affirmative defense to that portion of their complaint that sought injured-on-duty benefits after their retirement, that fact did not appear in any of the complaints, and the judgments that entered in this case "operated as an unqualified admission of [defendants'] liability to the plaintiffs and precluded them from raising any affirmative defenses, all of which had been waived * * *." *Calise v. Hidden Valley Condominium Association*, 773 A.2d 834, 839 (R.I.2001). Thus, the "final judgments" in this case effectively barred defendants from raising any voluntary-retirement defense after they had disobeyed the court's discovery orders and suffered the sanction of damage judgments being entered against them that were consistent with plaintiffs' liability theory. "The entire theory of a default is that a defaulting defendant has forfeited the privilege of disputing liability." *Id.* at 841. Thus, at the hearing to calculate the damages specified in the previously entered judgments, defendants should not have been permitted to introduce evidence concerning plaintiffs' alleged voluntary retirement from the po-

lice force in an effort to defeat or limit plaintiffs' theory of liability or the measure of damages specified in the judgments. Even though defaults entered under Rule 55 may be limited to liability determinations, default judgments entered under Rule 37 can and often do award damages and other relief that the non-defaulting party may be entitled to recover pursuant to the well-pleaded allegations in the complaint. *See, e.g., Securities Exchange Commission v. First Financial Group of Texas, Inc.,* 659 F.2d 660, 664–66 (5th Cir. 1981) (upholding entry of default judgment providing injunctive relief for persistent failure to respond to discovery requests). Thus, the Superior Court did not err by entering default judgments that provided, *inter alia,* for injunctive relief and for a particular measure of calculating the damages in this case.

(5) *The plaintiffs' collective-bargaining agreement trumped any voluntary-retirement restrictions on collecting injured-on-duty benefits.* Moreover, on the merits, I do not agree with the majority that § 45–19–1 is necessarily inconsistent with awarding injured-on-duty benefits to disabled police officers who have retired when, as here, it was alleged that the parties' collective-bargaining agreement provided them with such benefits. In *Chester v. aRusso,* 667 A.2d 519 (R.I. 1995), this Court held that the provisions of a collective-bargaining agreement between this same town and its police officers called for injured-on-duty benefits to be paid to the town's *retired* police officers and that this agreement trumped any special legislation to the contrary. Moreover, the Court expressly noted that such an agreement was consistent with the general legislation (namely, § 45–19–1) providing for injured-on-duty benefits to be paid. *Id.* at 521 ("[H]ere, there exists a valid and enforceable collective-bargaining agreement whose terms provide greater disability benefits than is afforded by the special [retirement] legislation but are in accordance with the provisions of the general legislation * * *."). This was the same liability theory that plaintiffs invoked in their complaints. Thus, I can discern no reason to overrule or to distinguish this Court's *Chester* ruling. Moreover, on its face, § 45–19–1 does not contain any requirement of continued employment during the period when injured-on-duty benefits are paid, so long as the disabled officer's incapacity continues. *See, e.g., Brissette v. Potter,* 560 A.2d 324 (R.I. 1989). Indeed, both *Chester* and *Brissette* involved *former* police officers—that is, police officers who were no longer employed by the town—who this Court ruled were nonetheless entitled to benefits under collective-bargaining agreements that tracked the terms of § 45–19–1.

In *Brissette,* this Court held that the mere fact that the municipality had terminated the disabled police officer after he was injured on duty did not disqualify that officer from thereafter receiving benefits under § 45–19–1. 560 A.2d at 326. In that case, the municipality argued that the injured-on-duty statute "implies that a town may place such a disabled police officer on a disability pension" providing for lesser benefits than § 45–19–1. *Brissette,* 560 A.2d at 325. But we said there as follows:

> "It is true that reference is made to a disability pension in the statute, but there is no clear delineation in respect to when and in what circumstances an officer's pay may be reduced when he is wholly or partially incapacitated due to injuries received in the performance of his duties. The language within § 45–19–1 clearly states that the town 'shall, during the period of such incapacity, pay

such police officer * * * the salary or wage to which the said police officer * * * would be entitled had he not been so incapacitated.' The statute is so clear and straightforward that we are unable by construction to import a different meaning into those words." *Id.* at 325–26.

As a result, this Court held that "under the clear language of the controlling statute and under the clear language of the provision of the contract [collective-bargaining agreement] that simply tracks the statute, plaintiff [the former police officer] is entitled to receive the salary to which he would have been entitled had he not been so incapacitated." *Id.* at 326. Thus, under *Chester* and *Brissette* any requirement of contemporaneous employment at the time injured-on-duty benefits are to be paid does not appear to be a precondition for recovery under § 45–19–1. For this reason, I respectfully disagree with the majority's analysis concerning the merits of these complaints, even if it were appropriate to reach the merits (and, for the reasons previously stated, I do not believe it is).

(6) *Prejudgment interest.* The majority concludes that because "the compensation of police officers pursuant to § 45–19–1 is a governmental function," the town (as an agent of the state) is protected by sovereign immunity and is therefore not liable to the plaintiffs for prejudgment interest as provided by G.L.1956 § 9–21–10. Although I fully agree with the majority that "[t]he exercise of police power is a purely governmental function," I do not agree that by entering into and then breaching employment contracts with its police officers and/or their union that a municipality is thereby exercising its police power. A municipality's entry into and then its breach of an employment contract or a collective-bargaining agreement with its

police force is a proprietary function and no more an exercise of its police power than its entry into a contract to paint the station house or its signing of a purchase and sale agreement to acquire squad cars. "[A] proprietary function is one which is not 'so intertwined with governing that the government is obligated to perform it only by its own agents or employees.'" *Housing Authority of Providence v. Oropeza,* 713 A.2d 1262, 1263 (R.I.1998) (quoting *Lepore v. Rhode Island Public Transit Authority,* 524 A.2d 574, 575 (R.I.1987)).

To distinguish between municipal conduct that is governmental or proprietary, "[t]he appropriate inquiry is 'whether the activity [at issue] was one that a private person or corporation would be likely to carry out.'" *Id.* (quoting *DeLong v. Prudential Property and Casualty Insurance Co.,* 583 A.2d 75, 76 (R.I.1990)). "If the answer is affirmative, then [the conduct is proprietary and] liability will attach." *O'Brien v. State,* 555 A.2d 334, 338 (R.I. 1989). In this case, although investigating and arresting criminal suspects is not an "'activity * * * that a private person or corporation would be likely to carry out,'" a private person or corporation frequently and quite regularly enters into employment and collective-bargaining contracts with employees. *Oropeza,* 713 A.2d at 1263. Therefore, because the town failed to abide by the collective-bargaining agreement and breached its contract with the plaintiffs, it should be liable for prejudgment interest pursuant to § 9–21–10.

This Court so concluded in *North Smithfield Teachers Association v. North Smithfield School Committee,* 461 A.2d 930 (R.I.1983). There, we held that the Town of North Smithfield was liable to pay prejudgment interest, in accordance with § 9–21–10, because it refused to abide by a collective-bargaining agreement and breached its contract with the plaintiff

teachers association. 461 A.2d at 933. Just as exercising police power is a governmental function, we have held that providing public education "is a governmental function and not a proprietary one." *Chakuroff v. Boyle,* 667 A.2d 1256, 1258 (R.I. 1995). Thus, implicit in our holding in *North Smithfield*—that the town was liable for prejudgment interest because of its breach of contract—is the conclusion that when a municipality contracts with and then breaches its agreement with a public teachers association it has engaged in a proprietary rather than governmental function. Otherwise, the Court could not have held that the town was liable to pay prejudgment interest in *North Smithfield* because "pursuant to § 9–21–10, prejudgment interest may [only] be awarded against a municipality on a breach of contract claim where a municipality acts in a proprietary or enterprise capacity." *Fleet Construction Co. v. Town of North Smithfield,* 713 A.2d 1241, 1245 (R.I.1998); *see also Reagan Construction Corp. v. Mayer,* 712 A.2d 372, 374 n. 2 (R.I.1998) ("Because the municipality in [*Jolicoeur Furniture Co. v. Baldelli,* 653 A.2d 740 (R.I.1995)] had acted in a proprietary capacity when it breached a contract to transfer real estate to the plaintiff and not as a governmental agent of the state, the municipality was not entitled to assert sovereign immunity as a shield against the imposition of interest on a judgment."). Therefore, because in *North Smithfield* this Court held that the act of a municipality in breaching its contract with a public-school teachers association constituted a proprietary function such that the town was liable to pay prejudgment interest, we should hold here that the act of a municipality breaching a contract with its police officers is also a proprietary function that exposed the town to prejudgment interest liability.

Finally, I do not agree that *Connelly v. Retirement Board of Providence,* 633 A.2d 1352 (R.I.1993) (*Connelly II*), is applicable here. In *Connelly v. City of Providence Retirement Board,* 601 A.2d 498, 500–01 (R.I.1992) (*Connelly I*), the Court held that because there was no dispute that the plaintiff firefighter suffered his disability while on duty, he was entitled to accidental disability retirement benefits instead of ordinary disability retirement benefits. Yet, because "determination of benefits was not an award of damages to which the statute [§ 9–21–10] would apply[, the Court held in *Connelly II*] that the plaintiff [was] not entitled to [prejudgment] interest" on the underpaid amounts. *Connelly II,* 633 A.2d at 1352–53. Here, however, the Rule 37 judgments contained a measure of damages that was *not* merely a "determination of benefits" but rather a determination that the town had breached the collective-bargaining agreement and, as a result, owed plaintiffs money damages. The measure of damages specified in the final judgments was "the difference between what [the town] paid [plaintiffs] since [the date of their injuries] and 100 percent of the salary and other benefits [they] would have received since [the date of injury] if [they] had continued to receive a salary and benefits." Thus, *Connelly II* is not controlling here.

Therefore, I believe that the Superior Court erred in refusing to award prejudgment interest to the plaintiffs in this case. For these reasons, I would affirm the judgments below in all respects, except with regard to the ruling denying prejudgment interest. On that issue, I would reverse and remand the case to the Superior Court for the calculation and award of interest.