**STATE OF RHODE ISLAND DEPARTMENT OF TRANSPORTATION**

v.

**PROVIDENCE AND WORCESTER RAILROAD CO. et al.**

**No. 94–237–Appeal.**

Supreme Court of Rhode Island.

May 2, 1996.

Thomas R. Bender, Robert D. Parrillo, Sidney Clifford, Jr., Providence, for Plaintiff.

Howard E. Walker, Providence, Douglas A. Giron, Cranston, Michael G. Sarli, Providence, for Defendant.

## OPINION

LEDERBERG, Justice.

This case arose following the sale of a parcel of land by the defendant, Providence and Worcester Railroad Co. (P & W or the railway company), to the codefendant, Promet Corp. (Promet). The conveyance was declared "null and void" by an amended

judgment of the Superior Court that ordered P & W to convey the parcel to the plaintiff, the State of Rhode Island Department of Transportation (state), for the purchase price of $100,000. The state was ordered to pay prejudgment interest on the purchase price, and P & W was required to reimburse Promet for interest on the purchase price and for property taxes that Promet paid while it was in possession of the parcel. The state appealed from the requirement that it pay interest on the purchase price; P & W appealed from the Superior Court's findings that the state was entitled to purchase the property and that P & W had to reimburse Promet for property taxes and for interest on the purchase price. Promet filed a brief in support of the amended Superior Court judgment. For the reasons recited below, we sustain in part and reverse in part the judgment of the Superior Court.

## Facts and Procedural History

In 1985, P & W owned a 6.97–acre parcel of waterfront property in East Providence, Rhode Island. Railroad tracks were situated on the property, but the property was, and remains, otherwise unimproved. The railroad tracks at one time ran from the former Union Station in Providence through a tunnel under the East Side of Providence, and over a bridge spanning the Seekonk River. At that point the tracks reached the subject property where they split to form a Y, one of whose arms directed rail traffic north toward Pawtucket, and the other traveled south toward Providence on what is known as the Bristol secondary track. The railroad company had acquired this property in 1982 from the Consolidated Rail Corporation (Conrail) as part of P & W's purchase of all Conrail's Rhode Island freight operations.

The property, however, was acquired by P & W subject to an order of the Special Court under the Regional Rail Reorganization Act of 1973, 45 U.S.C. §§ 719(b) and 745(d). That order required P & W to "guarantee rail service [on the property] for four years from the date" of conveyance on May 1, 1982, and stipulated that P & W could "not seek to abandon or discontinue rail service * * * for such four-year period." It is undisputed that P & W never petitioned the Interstate Commerce Commission (ICC) to abandon or to discontinue rail service pursuant to the provisions of 45 U.S.C. § 744.

On December 12, 1985, P & W entered into a purchase and sale agreement with Promet for the sale of the subject property at the price of $100,000. Although the tracks were still suitable for rail use, the property was not being used for rail purposes, or any other uses at the time of the transaction. The terms of the purchase and sale agreement expressly made the agreement "subject to a 30 day option in the State of Rhode Island to purchase the premises," as required by G.L. 1956 § 39–6.1–9, which provided:

"All rail properties within the state offered for sale by any railway corporation after April 9, 1976 shall be offered for sale to the state in the first instance at the lowest price at which the railway corporation is willing to sell. The railway corporation shall notify the state in writing if it desires to offer for sale any rail properties. The state shall have a period of not more than thirty (30) days from receipt of the notification to accept the offer." [1]

On November 20, 1985, Joseph Arruda (Arruda), assistant director for planning for the State Department of Transportation, wrote to P & W's agent, Joseph DiStefano (DiStefano). In that letter, Arruda referred to an October 22, 1985 meeting he had attended with DiStefano and principals of Promet at which "it was mentioned that Promet Property and P & W were discussing the sale of abandoned railroad properties." Arruda claimed that "the state must be given first option to acquire" the property and stated that "[i]f, in fact, P & W is pursuing the sale of any railroad property in this area, we would sincerely appreciate being notified at the earliest possible date." On December 12, 1985, DiStefano wrote to Arruda, stating:

"Dear Mr. Arruda:

1. General Laws 1956 § 39–6.1–9 has since been amended by P.L.1992, ch. 332, § 1, to provide that the "state shall have a period of not more than ninety (90) days from receipt of the notification to accept the [railway corporation's] offer."

"You are hereby notified, pursuant to Section 39–6.1–9 of the Rhode Island General Laws, that this company proposes to sell a certain parcel of land situated at East Providence, Rhode Island * * * for $100,000 with a closing to be held on January 17, 1986 * * *.

"Pursuant to statute, the State of Rhode Island has a period of thirty (30) days from the date of this notification within which to accept this offer to sell under the same terms and conditions as outlined in the enclosed Real Estate Sales Agreement.

"If the State's rights are not exercised within such period, we shall deem ourselves free to sell the property to Promet Corp. in accordance with the terms of the enclosed Real Estate Sales Agreement.

"This notice is sent to you although this company is of the opinion that the property in question is not covered by the provisions of Section 39–6.1–9."

On January 7, 1986, Herbert DeSimone (DeSimone), director of transportation for the state, accepted the offer in writing. In his letter to DiStefano, DeSimone wrote, "Of course, you understand that certain wording in the Real Estate Sales Agreement relating to 'buyer' and obligations concerning the removal of track would be inappropriate to the purpose of the State's purchase." The closing between P & W and Promet had been originally scheduled for January 17, 1986, but the parties rescheduled several times, finally agreeing to April 14, 1986, at 10 a.m. The reason for rescheduling the closing date was to allow the state and Promet's engineers to determine whether the property could accommodate Promet's development plans while preserving the state's rail options. Such a plan proved to be impossible.

On April 11, 1986, the state filed a complaint in Superior Court, claiming that P & W was refusing to convey title to the property to the state but was going to "convey title to said land to the Promet Corporation on Monday, April 14, 1986 at 8:30 A.M. in derogation of the State's statutory rights." The state sought a temporary restraining order to enjoin the conveyance to Promet, but the Superior Court justice denied the state's request, indicating that the state had protected its rights and that P & W would be proceeding at its own risk.

Some minutes before 10 a.m. on April 14, 1986, Arruda appeared on behalf of the state at DiStefano's office and tendered a check for $100,000. Arruda was informed that P & W had already delivered the deed to the property to Promet earlier that morning. The closing between P & W and Promet had taken place at a location and time (8:30 a.m. instead of 10 a.m.) different from those originally scheduled, and P & W had taken no affirmative steps to inform the state of these changes.

The state filed its amended complaint on December 9, 1986, naming both P & W and Promet as defendants, praying that the deed to Promet be declared null and void. Promet filed two counterclaims and a request for jury trial. The counterclaims were later severed, and the parties waived by stipulation the demand for a jury trial. The trial was held before a justice of the Superior Court on November 15, 1991, and January 30, 1992. At trial, P & W and Promet argued that the subject property was not "rail property" subject to the statute because it was not being used for rail purposes at the time of the conveyance. The railroad company and Promet further argued that the state had waived any rights it possessed under the statute by having failed to tender payment for the property within the thirty days prescribed in § 39–6.1–9.

In his decision issued from the bench, the trial justice found that the property in question is "rail property" within the meaning of § 39–6.1–9, that it was dedicated for railroad use, and that it was available for rail purposes. The trial justice found "some of the testimony given by defendant's witness disingenuous when he made the comment that there was no function in 1986 for rail property uses, when that was exactly the same condition when the Special Court order was entered into in 1982, which specifically says that no abandonment or discontinue of rail use service should take place for a four-year period after the conveyance." The trial justice further found that the state had validly accepted P & W's offer within the thirty-day period and that the state was not required to

tender payment at that time. Rather, the trial justice determined that the state had a "reasonable time" in which to pay for the property, and he indicated that such reasonable time coincided with the various closing dates scheduled by P & W and Promet.

The trial justice issued an amended judgment on March 17, 1994. In that judgment, the trial justice declared the deed from P & W null and void and ordered that the property be transferred to the state. In addition, the trial justice ordered P & W to repay to Promet the purchase price of $100,000 plus interest and to reimburse Promet for real estate taxes that Promet had paid on the property, plus interest on that amount. Finally, the amended judgment required the state to pay P & W the $100,000 purchase price plus interest.

On April 14, 1994, the state appealed that portion of the amended judgment that required the state to pay P & W the interest on the $100,000 purchase price. The railroad company filed its notice of appeal on April 20, 1994.

### Did the State's January 7, 1986 Letter Constitute a Valid Acceptance of P & W's Offer?

 The trial justice found that on December 12, 1985, P & W extended an option to the state to purchase the subject property and that the January 7, 1986 letter from DeSimone to DiStefano was "a valid exercise of the Section 39–6.1–9 option." The finding of a trial justice sitting without a jury in respect to the formation of a contract is entitled to great weight, and this Court will not disturb such a finding unless the trial justice "misconceived material evidence or was otherwise clearly wrong." *Smith v. Boyd*, 553 A.2d 131, 134 (R.I.1989). On appeal, P & W asserted that no contract for the sale of the subject parcel existed because the state's January 7, 1986 letter did not constitute a valid acceptance of P & W's December 12, 1985 offer. In support of its assertion, P & W argued that the January 7 letter in fact proposed additional terms to the agreement. The letter from DeSimone to DiStefano provided in pertinent part:

"Pursuant to Rhode Island General Law, Section 39–6.1–9, I am writing to you on behalf of the State of Rhode Island to exercise its right to accept the offer to purchase 6.9 acres of land * * *.

Of course, you understand that certain wording in the Real Estate Sales Agreement [referring to the agreement between P & W and Promet] relating to 'buyer' and obligations concerning the removal of track would be inappropriate to the purpose of the State's purchase.

"Please contact Mr. Joseph F. Arruda of this department to arrange for a meeting to revise the existing offer to conform the State's acceptance."

P & W argued that "[a]s a matter of law, [the state's] letter was nothing more than an invitation to meet and attempt to reach agreement on the terms of the sale." We disagree.

 This Court has held that a valid acceptance "must be definite and unequivocal," *Ardente v. Horan*, 117 R.I. 254, 259, 366 A.2d 162, 165 (1976), and that an "acceptance which is equivocal or upon condition or with a limitation is a counteroffer and requires acceptance by the original offeror before a contractual relationship can exist." *John Hancock Mutual Life Insurance Co. v. Dietlin*, 97 R.I. 515, 518, 199 A.2d 311, 313 (1964). It is not equivocation, however, "if the offeree merely puts into words that which was already reasonably implied in the terms of the offer." 1 *Corbin on Contracts*, § 3.32 at 478–79 (rev. ed.1993). It is further the case that "an acceptance must receive a reasonable construction" and that "the mere addition of a collateral or immaterial matters [*sic*] will not prevent the formation of a contract." *Raydon Exploration, Inc. v. Ladd*, 902 F.2d 1496, 1500 (10th Cir.1990). *See also Hoyt R. Matise Co. v. Zurn*, 754 F.2d 560, 566 (5th Cir.1985) ("[t]o transmogrify a purported acceptance into a counteroffer, it must be shown that the acceptance differs in some material respect from the offer").

 The state's letter of acceptance points out that the name of the buyer in the original agreement would have to be changed. In our opinion, this statement simply reflected

the obvious necessity to replace "the state" for "Promet" as the named buyer in the deed. Moreover, the letter's reference to P & W's obligation to Promet to remove tracks from the property as "inappropriate to the purpose of the State's purchase" did not *add* any terms or conditions to the contract but, instead, constituted a clear benefit to P & W. In pointing out that the "wording" that obligated P & W to remove tracks would be "inappropriate" in an agreement between P & W and the state, the state, in fact, relieved P & W from the obligation and expense it otherwise would have incurred in selling the property to Promet. When an offeree, in its acceptance of an offer, absolves the offeror of a material obligation, the "rules of contract construction and the 'rules of common sense'" preclude construing that absolution as an additional term that invalidates the acceptance. *Textron, Inc. v. Aetna Casualty and Surety Co.*, 638 A.2d 537, 541 (R.I.1994); *cf. New Castle County v. Hartford Accident and Indemnity Co.*, 970 F.2d 1267, 1270 (3rd Cir.1992), *cert. denied*, 507 U.S. 1030, 113 S.Ct. 1846, 123 L.Ed.2d 470 (1993) ("the question is not whether there is an ambiguity in the metaphysical sense, but whether the language has only one reasonable meaning when construed, not in a hypertechnical fashion, but in an ordinary, common sense manner"). Moreover, DeSimone explicitly and unequivocally stated, "I am writing to you on behalf of the State of Rhode Island to exercise its right *to accept* the offer to purchase 6.9 acres of land," and requested the meeting with Arruda in order "to revise the existing offer to conform the *State's acceptance.*" (Emphases added.)

Therefore, we concur, with the trial justice who found that the state validly accepted the option extended to it by P & W. Because the contract was valid, we need not address P & W's contention that the parcel was not rail property within the meaning of § 39–6.1–9.

### Did the Trial Justice Err in Ordering the State to Pay P & W Interest on the Purchase Price of the Subject Property?

We next address the state's contention that the trial justice erred in requiring the state to pay interest on the $100,000 purchase price of the land. General Laws 1956 § 9–21–10 provides for the award of prejudgment interest in civil actions. The section provides, *inter alia*, that "[i]n any civil action in which a verdict is rendered or a decision made for pecuniary damages, there shall be added by the clerk of the court to the amount of damages, interest at the rate of twelve percent (12%) per annum thereon from the date the cause of action accrued which shall be included in the judgment entered therein."

This Court has held, however, that § 9–21–10 does not apply to judgments against the state. *Jacor, Inc. v. Cardi Corp.*, 673 A.2d 1077, 1078 (R.I.1996); *Clark–Fitzpatrick, Inc./Franki Foundation Co. v. Gill*, 652 A.2d 440, 451–53 (R.I.1994). *Clark–Fitzpatrick*, involved a subcontractor who brought an action against the general contractor as a pass-through claim against the state. We noted that "because the right to receive interest on judgments was unknown at common law as it is a right created by statute, the court will strictly construe any statute that awards interest on judgments so as not to extend unduly the changes enacted by the legislature." 652 A.2d at 451 (quoting *Andrade v. State*, 448 A.2d 1293, 1294 (R.I.1982)). In *Clark–Fitzpatrick*, we examined both § 9–21–10 and the waiver-of-immunity statute under which the claimant sought redress from the state, and we determined that neither statute evinced an intent by the General Assembly to waive immunity in respect to prejudgment interest. *Id.* at 453.

Although the trial justice in this case did not invoke § 9–21–10 when he ordered the state to pay interest on the $100,000 purchase price of the subject property, we believe the principles articulated in *Clark–Fitzpatrick* and *Jacor* must nevertheless control our review of the trial justice's order. The railroad company has not presented any authority that would indicate a waiver by the state of its immunity from having to pay prejudgment interest. The state agreed to pay $100,000 for the property, but the record is devoid of any evidence that the state agreed to pay interest on this purchase price in the event that payment was delayed because of litigation or any other reason. Be-

cause the state has not acted to "expose the state treasury to the additional financial burden of prejudgment interest," *Andrade,* 448 A.2d at 1295, we conclude that the trial justice erred in ordering the state to pay prejudgment interest. In addition, we are of the opinion that the trial justice did not err in requiring P & W to reimburse Promet for the purchase price of $100,000 plus interest thereon and for the payment of taxes inasmuch as P & W benefitted from the use of the funds during the period of time this case was being litigated.

In conclusion, therefore, we sustain the state's appeal, and we deny and dismiss the appeal of P & W. We affirm the amended judgment of the Superior Court except that we vacate the requirement that the state pay interest to P & W on the purchase price of the property. The papers in this case may be returned to the Superior Court with direction to enter judgment consistent with this opinion.

FLANDERS, J., did not participate.