**RHODE ISLAND PUBLIC TELECOMMUNICATIONS AUTHORITY**

v.

**Glenn F. RUSSELL et al.**

**No. 2004–309–Appeal.**

Supreme Court of Rhode Island.

Jan. 26, 2007.

Joseph D. Whelan, Providence, for R.I. Telecommunications Authority, plaintiff.

Sue Ellen M. Dunn, Cranston, for the R.I. Department of Administration, plaintiff.

Lauren E. Jones, Providence, for Defendant.

Present: WILLIAMS, C.J., GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

Justice SUTTELL, for the Court.

The defendant, Glenn F. Russell, was for many years a familiar personality on Channel 36, Rhode Island's public television station. As its director of public affairs he had occasion to interview many, if not all, of the state's major policymakers and public figures. In 1992, Russell was notified that, because of reductions in state financing, his position had been abolished and he was being laid off. There began this protracted saga in which Russell seeks either to return to Channel 36 or to secure a position of similar grade within state service.

In this action for declaratory judgment, the Rhode Island Public Telecommunications Authority (the authority or Channel 36) and the Rhode Island Department of Administration (the DOA) appeal from a Superior Court judgment declaring that Russell is entitled to veteran's status under G.L.1956 § 36–5–7, directing the DOA to place Russell in a position of similar grade in state employment, and ordering Channel 36 to compensate Russell for his loss of wages. Mr. Russell has filed a cross-appeal, contending that both Channel 36 and the DOA should have been held liable for restoring him to state service and for the back pay award. He also asserts that the trial justice erred by not factoring vacation/sick leave benefits into the back pay award, and by not including prejudgment interest. For the reasons set forth in this opinion, we affirm in part, vacate in part, and remand the case to Superior Court with instructions to enter judgment consistent with this opinion.

## I

### Facts and Travel

On April 20, 1978, the (since reorganized) Rhode Island Department of Education hired Mr. Russell as an unclassified state employee. On April 15, 1980, Russell filled out and submitted an application for employment and was hired as a "non-classified" employee at Channel 36. On that application, Russell misrepresented his age, the year he graduated from high school, the years he attended college, and his status as a war veteran. In short, Russell lowered his age by five years, adjusted the dates of his school matriculation accordingly, and checked a box indicating that he was not a war veteran when, according to the applicable service dates printed on the application itself, he did (and does) qualify as a war veteran. Regardless, Russell began work at Channel 36, and maintained his position when the Education Act of 1981 summarily dismantled the Department of Education and reorganized its components into three separate entities. The newly created Rhode Island Public Telecommunications Authority, a public corporation, took over Channel 36 in 1982, and Russell was effectively

transferred to the employ of the authority by legislative fiat. Mr. Russell became the director of public affairs for Channel 36, and remained a "non-classified" employee of the authority.

In a memorandum dated July 23, 1992, Susan Farmer, the president and chief executive officer of the authority, notified Russell that Channel 36 had eliminated the position of director of public affairs as part of a strategic reorganization spurred by reductions in state financing. Mrs. Farmer also advised Russell that he would be laid off as of August 21, 1992. Mr. Russell notified representatives of Local 2012 of the Professional Employees Union, A.F.T. (the union), who concluded that the Collective Bargaining Agreement (CBA) in force between the union and the authority required sixty days' advance notice before a layoff. Consequently, on July 29, 1992, H. Wells French, in his capacity as chairman of the Union Grievance Committee, sent Farmer notice of Russell's grievance and requested a hearing on the matter. On August 19, 1992, Russell, French, and union president John J. Wilkinson met with Farmer and the authority's legal counsel. At this meeting, the parties agreed that in exchange for Russell's waiver of all claims and grievances associated with his layoff, the effective date of Russell's layoff would be pushed back twenty-eight days, to September 18, 1992. The parties effectuated their compromise in a memorandum of agreement (agreement), dated August 21, 1992.[1] The authority's legal counsel drafted and signed the agreement on behalf of Channel 36, and French and Wilkinson signed on behalf of Russell and the union, respectively. Mr. Russell did not sign the agreement, but testified that he received and "must have" reviewed it approximately one week later. At trial, Wilkinson affirmed that both he and French were "fully authorized to settle grievances on behalf of the union and its members." The authority subsequently paid Russell in accordance with the terms of the agreement, and Russell accepted that money.

On September 18, 1992, his official layoff date, Russell applied for and received a Certificate of Veteran's Status (certificate) from the DOA Office of Personnel Administration. Mr. Russell admitted at trial that he was aware of the statute (§ 36–5–7) governing veteran's status before July 1992, but also testified that he was uncertain of his own standing as a veteran until he actually received the certificate. He acknowledged that he did not raise the issue of his possible veteran's status at any time during the discussions and negotiations with Channel 36 concerning his layoff. Channel 36 received no notice of Russell's veteran's status until Russell, through his attorney, sent a letter to Farmer more than a year later, on December 10, 1993. Mr. Russell testified that during the intervening months he had attempted to use his veteran's status, along with his "rapport" with various officials in state government, to secure another suitable position with the state. Mr. Russell's testimony alluded to conversations with several unnamed officials without recalling any of them in specific detail, and the record shows two letters, one to Anthony Bucci of the DOA and one to David Cruise,

---

1. The memorandum of agreement reads, in relevant part, as follows:

"The effective date of the placement of Mr. Glenn Russell on lay-off is hereby extended by the Rhode Island Public Telecommunications Authority from August 21, 1992 to September 18, 1992. In consideration of said extension *all grievances and claims by or on behalf of Glenn Russell regarding his lay-off from Channel 36 are hereby withdrawn, waived and settled.* From August 21, 1992 to September 18, 1992 Mr. Russell is not assigned duties on Station premises." (Emphasis added.)

then-Governor Sundlun's chief of staff. The letters are dated April 20, 1993, and in both Russell suggests various capacities in which his talents might best be put to use on the state's behalf. Mr. Russell did not receive a response from either party.

In a letter dated September 3, 1993, to Charles McCarthy, the administrator of adjudication of the DOA (administrator of adjudication), Russell bemoaned the lack of attention he had received from the state since his layoff, and requested clarification of "how and when the State intend[ed] to honor my Tenure under R.I. G.L. 36–5–7." The administrator of adjudication scheduled a preliminary hearing on the matter on September 30, 1993, and in the interim Russell wrote to Ned Grace, chairman of the authority, to request that, under the union's CBA with Channel 36, Russell's name be continued on the preferred reemployment list for another year. Russell did not mention his hearing before the DOA in the letter to Grace. In a letter to Russell dated September 27, 1993, Farmer confirmed Russell's one-year continuation on the authority's preferred reemployment list. Russell's hearing took place on September 30, after which the administrator of adjudication held that Russell qualified for veteran's status under § 36–5–7 and that he was "hereby restored to his previous classification or, if that is impossible, to a position of similar grade at Channel 36." The decision also awarded Russell back pay and benefits.

Channel 36 was not a party to the administrator of adjudication's proceedings, and only received notice of the outcome on December 10, 1993, by means of the aforementioned letter, which had been sent to both Mr. Bucci of the DOA and Mrs. Farmer of Channel 36. In the letter, Russell's attorney informed them of the administrator of adjudication's decision, noting that the time to appeal the decision had passed, and asking them to "kindly advise me as to the date and time and place at which you wish Mr. Russell to return to work[.]" Channel 36 responded on December 30, 1993, by filing an action for declaratory relief in Superior Court seeking: (1) a declaration that the administrator of adjudication lacked jurisdiction to hear Russell's "appeal" because, as a nonclassified employee, Russell was not subject to the merit system laws; (2) a declaration of Channel 36's rights under the agreement it entered with Russell on August 21, 1992; and (3) appellate review of the administrator of adjudication's decision concerning Russell. Mr. Russell counterclaimed, seeking enforcement of the administrator of adjudication's decision.

Thereafter, Channel 36 filed an amended complaint to join the DOA as a codefendant, and Russell filed an amended answer with a counterclaim against Channel 36 and a cross-claim against the DOA. Russell's counterclaim and cross-claim averred that Channel 36 and/or the DOA must comply with § 36–5–7 and provide him with a position of equal grade at either Channel 36 or elsewhere in state government. Before the case was reached for trial in the Superior Court, Russell submitted his retirement request to the state on July 29, 1996 and began collecting his state retirement pension.

The jury-waived trial proceeded in two phases. The first phase was devoted to resolving Russell's veteran's status under § 36–5–7, and the second focused on the determination of damages. On May 2, 2000, the trial justice ruled that (1) Russell was entitled to veteran's status and (2) the waiver clause in the agreement signed by his union representatives and Channel 36 did not bar Russell from pursuing his claim. Further, the Superior Court ruled that the DOA (*not* Channel 36) was re-

sponsible for placing Russell in state employment.

On November 13, 2003, after the damages phase of the trial, the trial justice affirmed that Russell was entitled to veteran's status and that the DOA was solely responsible for placing him in a state job, but also held that Channel 36 alone was liable for the restitution of Russell's back pay. Channel 36 filed a motion for reconsideration, contending that it was "incongruous" to find that the DOA was responsible for Russell's placement yet require Channel 36 to pay the damages owed to Russell as a result of the DOA's failure to place him. The Superior Court justice denied Channel 36's motion for reconsideration in a bench decision on January 29, 2004. For his part, Russell objected and filed a cross-motion for reconsideration, based on his contention that prejudgment interest should have been added to the back pay awarded him, but this motion also was denied. In a judgment entered on July 23, 2004, the Superior Court ordered Channel 36 to pay Russell $439,306.17 without prejudgment interest and $362.34 for 15 percent of his sick leave accumulated at the time of his layoff.[2] Also on July 23, 2004, the Superior Court granted the DOA's motion for a stay of the order requiring the DOA to place Russell in state employment, adding that if the decision were affirmed on appeal, the DOA would assume the responsibility for compensating Russell for any back pay that accrued to him after July 24, 2004. All parties filed timely notices of appeal to this Court.

## II

## Standard of Review

■ A number of the allegations of error call into question the findings of the trial justice. This Court has established that "[i]t is well settled that the 'findings of fact of a trial justice, sitting without a jury, will be given great weight and will not be disturbed absent a showing that the trial justice overlooked or misconceived material evidence or was otherwise clearly wrong.'" *Foley v. Osborne Court Condominium*, 724 A.2d 436, 439 (R.I.1999) (quoting *Technology Investors v. Town of Westerly*, 689 A.2d 1060, 1062 (R.I.1997)). Of course, it is also well settled that "[q]uestions of law * * *, including questions of statutory interpretation, are reviewed *de novo* by this Court." *Carnevale v. Dupee*, 783 A.2d 404, 408 (R.I.2001).

## III

## Analysis

### A. Mr. Russell's Veteran's Status

■ On appeal, both Channel 36 and the DOA question Russell's eligibility for veteran's status. Some of their contentions, however, are undercut by the parties' own pretrial stipulations. Under § 36–5–7, an honorably discharged veteran[3] of the armed forces who has fifteen years of service credit with the state qualifies for "full

---

2. The judgment also permitted Channel 36 to "deduct the sum of $120.00 per day for each work day that Russell is employed in state service prior to July 24, 2004."

3. General Laws 1956 § 36–5–6(b) defines a "Veteran" as follows:
   "any man or woman who has been engaged heretofore, is now, or may hereafter be engaged in the active service of the armed forces of the United States with a minimum of ninety (90) days of active duty time served during any declared war, undeclared war, Korean campaign, conflict in Vietnam or any war, campaign or conflict which the armed forces of the United States of America actively engages in and for which service a campaign ribbon or expeditionary medal was earned."

status" in his position.[4] As Russell correctly notes on appeal, both Channel 36 and the DOA stipulated in an "Agreed Partial Statement of Facts"[5] signed by all parties on August 16, 1999, that Russell is an honorably discharged veteran with "fifteen (15) years of 'service credit' as described in R.I.G.L.1956 § 36–5–7." The stipulations of fact concerning Russell's military service and fifteen years of service credit preclude the authority and the DOA from now arguing that Russell is lacking either one of these two statutory prerequisites for "full status" in his job. Concerning stipulations, this Court has held:

"A stipulation entered into with the assent of counsel and their clients, relative to an evidentiary fact or an element of a claim, is conclusive upon the parties and removes the issue from the controversy. It is no longer a question for consideration by the tribunal. Therefore, absent an agreement of the parties to do so, a stipulation has the attributes of a consent order or consent judgment and cannot be set aside simply because a litigant no longer wants to be bound by its terms." *In re McBurney Law Services, Inc.*, 798 A.2d 877, 881–82 (R.I.2002).

The "tribunal" referred to in *McBurney* was a court-appointed valuation panel; nevertheless, that specific context was immaterial to the Court's holding concerning the binding effect of stipulations on which all parties had agreed.

Generally, the prevailing force of stipulations on subsequent appeals is widely accepted:

"When an adverse party is willing to stipulate to the truth of a certain allegation, the party having the burden of proving that allegation is relieved from proving it, that is, a stipulation renders proof unnecessary and both prevents an independent examination by a judicial officer or body with respect to the matters stipulated and binds the parties on appeal." 73 Am.Jur.2d *Stipulations* § 17 at 500–01 (2001).

The DOA argues that because the trial court previously had denied its motion for summary judgment, the stipulations were "the law of the case," which "at the time, the state was required to accept, even though the state vigorously disagreed with that ruling." The DOA cites no authority to support this notion, and we respectfully disagree. In *Rhode Island Hospital Trust*

---

4. Section 36–5–7 reads in relevant part:

"(a) Any person who is an honorably discharged veteran of the armed forces of the United States and who has completed fifteen (15) or more years, not necessarily consecutive of service credit, those credits having been earned in either the classified, nonclassified, or unclassified service of the state or a combination of both, shall be deemed to have acquired full status in the position he or she holds at the time of obtaining fifteen (15) years of service credit.
'* * *
"(2) That in case of layoff or the abolition of a position through reorganization or otherwise, any person in that position or subject to layoff, who has full status, otherwise qualified under this section, shall be retained within the state services in a position of similar grade;

"(3) That this section shall not apply to employees of the state government whose method of appointment, salary, and term of office is specified by statute[.]"

5. The "Agreed Partial Statement of Facts" reads, in relevant part, as follows:

"1. Glenn F. Russell (hereinafter 'Russell') is an honorably discharged veteran of the armed forces.
"2. Russell has in excess of fifteen (15) years of 'service credit' as described in R.I.G.L. 1956 § 36–5–7.
"3. Russell obtained fifteen (15) years of 'service credit,' in part, by being employed by the Rhode Island Telecommunications Authority (hereinafter 'Authority'). At the time Russell obtained fifteen (15) years of 'service credit' he was employed by the Authority as Director of Public Affairs."

*National Bank v. National Health Foundation,* 119 R.I. 823, 829, 384 A.2d 301, 305 (1978) this Court held that the rule of the law of the case "does not have the finality of the doctrine of res adjudicata" and that an earlier denial of summary judgment did not preclude a subsequent motion for directed verdict on an expanded record. "The denial of a motion for summary judgment merely determines that a fact issue is involved, and does not even establish the law of the case." 73 Am.Jur.2d *Summary Judgment* § 62 at 701 (2001). Moreover, because neither Channel 36 nor the DOA moved at trial to withdraw or repudiate any of the agreed-upon stipulations, the issue has not been preserved for appeal.[6] Mr. Russell specifically cited the relevant pretrial stipulations in his post-trial memorandum below, so the DOA's contention that Russell did not preserve the right to invoke these same stipulations before this Court is unavailing. The extent to which the stipulations undermine arguments against Russell's attainment of "full status," however, requires further exploration.

Because the DOA and Channel 36 stipulated that Russell obtained fifteen years of service credit in part by working for the authority, they are precluded from advancing on appeal any attacks against Russell's veteran's status that challenge his acquisition of that service credit. The validity of Russell's "Certificate of Veteran's Status" and the jurisdiction of the administrator of adjudication become irrelevant. Russell's status as a classified, unclassified or nonclassified employee is similarly moot for

purposes of determining his eligibility under § 36–5–7.

■ Channel 36 and the DOA also argue, however, that the exception for "employees of the state government whose method of appointment, salary and term of office is specified by statute" set forth in § 36–5–7(a)(3) puts Russell's position with Channel 36 outside the scope of the statute and the "full status" it confers. To support this position, they refer to *Casey v. Sundlun,* 615 A.2d 481 (R.I.1992) and *Donnelly v. Almond,* 695 A.2d 1007 (R.I.1997).

In *Casey,* the plaintiff was a sheriff whose term was expressly fixed at ten years under G.L.1956 § 42–29–1,[7] but this Court did not reach the issue of whether the statutory basis of the sheriff's term precluded him from veteran's status under § 36–5–7. *Casey,* 615 A.2d at 481–82. Instead, we rejected the sheriff's bid for tenure because the specific power of appointment reserved for the governor in § 42–29–1 trumped the general assurance of tenure found in § 36–5–7. *Casey,* 615 A.2d at 483. The facts found in *Donnelly* are more akin to Russell's plight. In *Donnelly,* the plaintiff was a sheriff's deputy who also claimed veteran's status under § 36–5–7, but this Court held that because his term of office was "specified by statute," he did not have full status in his position. *Donnelly,* 695 A.2d at 1009.

Channel 36 and the DOA both submit that because G.L.1956 § 16–61–8 empowers the authority's general manager to appoint employees, § 36–5–7(a)(3) disquali-

---

6. "Generally, an appellate court will not review a stipulation concluded in a lower court, unless proper application for relief was made in the lower court, and the ruling of the lower court is sufficient to present the question to the appellate court for disposal." 73 Am. Jur.2d *Stipulations* § 12 at 493 (2001); *see also Wilbur v. Wilbur,* 18 R.I. 654, 656, 30 A. 455, 456 (1894).

7. General Laws 1956 § 42–29–1(a) says, in relevant part:

   "There shall be a sheriff for each county, each of whom shall be appointed by the governor and shall hold office for a period of ten (10) years * * *."

fies Russell from attaining full status just as surely as it did Mr. Donnelly. The trial court distinguished Russell's case from *Donnelly* because there the appointing sheriff's term was fixed by statute at ten years, but that § 16–61–8 places no such term limit on the authority's general manager. *See Donnelly*, 695 A.2d at 1009. Observing that this Court had deemed Mr. Donnelly's term to be "coincident with the term of office of the appointing sheriff," *id.*, the trial court found that Russell's position with the authority was not similarly tied to any statutorily fixed term and decreed § 36–5–7(a)(3) inapplicable as a result.

Based on our review of the statute in question, we also believe that, in the circumstances of this case, the general manager's statutory duty to appoint employees does not bring Russell within the ambit of the exemption for employees "whose method of appointment, salary, and term of office is specified by statute." Section 36–5–7(a)(3). Even assuming Mr. Russell's term of office was subject to the will of Mrs. Farmer, his tenure at Channel 36 was not coterminous with her incumbency as general manager. We therefore affirm the Superior Court's holding concerning his veteran's status.

## B. Liability of Channel 36

■ The memorandum of agreement provides that "all grievances and claims by or on behalf of Glenn Russell regarding his layoff from Channel 36 are hereby withdrawn, waived and settled." Mr. Russell argues that this broad waiver did not extend to his *post-layoff* rights under § 36–5–7. The trial court agreed that the waiver "does not prevent Russell from pursuing his statutory right to veteran's status[,]" and that Russell "did not waive his right to veteran's status under § 36–5–7." We concur that the agreement does not operate as a complete waiver of all Rus-

sell's rights to veteran's status. It does, however, relieve Channel 36 of any liability it might otherwise have borne relative to his veteran's status.

Given the circumstances, Russell's "post-layoff" counterclaim against Channel 36 is simply too intertwined with his layoff to be considered truly beyond the scope of his waiver in the agreement. Russell admitted at trial that he was aware of § 36–5–7 before taking part in layoff negotiations with Channel 36 in August 1993, but said that he was unsure whether he was "finally eligible" until he actually applied for and received his certificate one month later. Because of Russell's false disclaimer of his status as a war veteran on his employment application, Channel 36 had no way of knowing that Russell was entitled to veteran's status under § 36–5–7. Russell asserts that his veteran's status represents a post-layoff right, but by the terms of the statute, veteran's status ensures that any qualified veteran whose position has been abolished or is "subject to layoff * * * shall be retained within the state services in a position of similar grade[.]" Section 36–5–7(a)(2). In the agreement, Russell unequivocally waived all claims or grievances against Channel 36 "regarding his lay-off." Yet Russell's "post-layoff" claims invoke the very status that might have secured his uninterrupted employment with the state if it had been timely raised.

Mr. Russell's attempts to unilaterally imbue with a more personally advantageous meaning the terms to which he agreed are unavailing. His waiver is clear on its face, and it forecloses his counterclaim against Channel 36. Mr. Russell's own misrepresentations, silence, and delays caused whatever dissonance he may perceive between the rights he waived in the agreement and those he contends he has retained under § 36–5–7. Russell is entitled to his veteran's status, but he may

not wield that status against Channel 36 in this context. Accordingly, we vacate and reverse the judgment insofar as it holds Channel 36 "solely responsible to compensate Russell for the income that he would have received during the period of his lay off."

### C. Liability of the DOA

In his cross-appeal, Mr. Russell asserts that the trial justice erred by "not putting DOA on the hook for the backpay award." We agree, although we set the hook somewhat farther downstream.

Having determined that Russell had acquired veteran's status under § 36–5–7, the trial justice concluded that the DOA, as the "agency responsible for making available to state agencies qualified candidates for employment * * *[,]" bore the duty to place Russell in a position of similar grade to the one he previously held at Channel 36. It follows, therefore, that the DOA also bears liability for the "income that he would have received during the period of his lay off." We recognize, however, that Russell's circumstances present a rather large anomaly to the DOA. In the case of a layoff of a classified employee, an appointing authority is statutorily required to notify the personnel administrator before the effective date of the layoff. *See* G.L.1956 § 36–4–37. Mr. Russell, however, was a nonclassified employee and Channel 36 had no concomitant obligation to notify the DOA of his impending layoff. Moreover, even if the DOA had been notified before the effective date of his layoff, his employment records would not have reflected his status as a veteran. Nevertheless, it is clear to us, based upon the plain language of § 36–5–7, that the General Assembly intended to bestow the benefits of full status upon any honorably discharged war veteran with fifteen or more years of service credit, whether in the classified, unclassified, or nonclassified service of the state.

Although we agree with the trial justice that the DOA was responsible to place Russell in state employment, we are disinclined to award any back pay to Russell for the span of his unemployment that preceded the DOA's awareness of his particular and peculiar circumstances. A review of the evidence reveals that until Russell wrote to Bucci on April 20, 1993, the DOA lacked any notice of Russell's layoff, his continuing unemployment, and his desire to assert veteran's status to secure a new position in state service. Although the DOA obviously knew about Russell's veteran's status as of the date it issued him the certificate (September 18, 1992), it cannot be charged with the responsibility of placing him in the employ of the state until it knew that he was laid off and wished to be retained within the state services. Clearly, Russell held the key to the full enjoyment of his veteran's status. Yet by misrepresenting such status on his original employment application and then remaining silent until after his layoff became effective, he chose to keep that key in his pocket.

We are also of the opinion that Mr. Russell's voluntary retirement effectively relieved the DOA of the responsibility for finding him a new state job. Although it is true, as Russell asserts, that state pensioners are not precluded from reemployment with the state under G.L.1956 § 36–10–36, we do not equate the possibility of reentry into state service with a lifetime entitlement to state employment. In *Webster v. Perrotta*, 774 A.2d 68, 80 (R.I.2001), this Court considered the impact of a voluntary retirement in the context of disability benefits payable to injured police officers. There, this Court ruled that police officers who retired voluntarily no longer were eligible to collect injured-on-duty disability

benefits under G.L.1956 § 45–19–1. *Webster*, 774 A.2d at 80. Although the facts certainly are distinguishable, our rationale in *Webster* is both germane and instructive here: "We have never held, nor do we hold today, that an on-duty injury or illness and a voluntary retirement amounts to a lifetime appointment to the police force or a lifetime pay check * * *." *Id.* A lifetime entitlement is precisely what Russell seeks. We are satisfied, however, that under the circumstances presented here, the DOA's responsibility to place Russell in state service ceased when he voluntarily retired.

Accordingly, we remand the case to the Superior Court with instructions to enter judgment against the DOA, and to award back pay to Russell for the period from April 20, 1993, until July 29, 1996, the date of his retirement.

### D.  Vacation and Sick Leave Benefits

█  Further, we affirm the trial court's determination that neither vacation time nor additional sick leave be included in the calculation of Russell's total back pay. Vacation and sick leave benefits are not items of additional income to an employee; rather, they provide continued payment of an employee's regular salary for periods the employee is authorized to be out of work. Mr. Russell touts both *Pettway v. American Cast Iron Pipe Co.*, 494 F.2d 211, 263 (5th Cir.1974) and *Cox v. American Cast Iron Pipe Co.*, 784 F.2d 1546, 1562 (11th Cir.1986) to support the addition of accumulated sick leave and vacation time to his award. In both of those cases a more expansive definition of back pay arose from instances of egregious discrimination against employees, and damages were calculated under federal employment discrimination statutes. Mr. Russell has never alleged, much less proven, any discrimination in his case. His reliance on *Wilkinson v. The State Crime Laboratory Commission*, 788 A.2d 1129 (R.I.2002) also is misplaced. In *Wilkinson*, we held that the wrongfully terminated employee/plaintiff was entitled to both back pay and reinstatement, and we tied the restoration of benefits to the reinstatement rather than the back-pay award. *Id.* at 1144. Mr. Russell was not wrongfully terminated, and he waived his right to reinstatement when he voluntarily retired. We are satisfied that the trial justice did not err by refusing to include credits for sick leave and vacation time in the calculation of Russell's back pay award.

### E.  Prejudgment Interest

Finally, we perceive no reversible error in the trial justice's refusal to add prejudgment interest to the award of back pay. We are, nonetheless, compelled to reach beyond the rationale offered by the trial justice below to address Russell's entreaty to this Court that § 36–5–7 operates as a waiver of sovereign immunity in this context. As he correctly notes, G.L.1956 § 9–21–10(a) requires the inclusion of prejudgment interest "[i]n any civil action in which a verdict is rendered or a decision made for pecuniary damages * * *." Undeterred, however, by this Court's broad statement in *State of Rhode Island Department of Transportation v. Providence and Worcester Railroad Co.*, 674 A.2d 1239, 1244 (R.I.1996), that "§ 9–21–10 does not apply to judgments against the state[,]" Russell asserts that the sovereign immunity underpinning that particular holding collapsed for the purposes of his claim when the General Assembly enacted § 36–5–7. Russell cites this Court's decision in *Pellegrino v. Rhode Island Ethics Commission*, 788 A.2d 1119, 1125 (R.I. 2002), in which we found that a statute entitling certain public officials to compensation for attending agency meetings conferred upon those officials a property in-

terest in that compensation. According to Russell's interpretation, once a statute establishes a property right, the government no longer can invoke sovereign immunity to escape liability for usurping that right. And we agree up to a point, but liability for back pay and liability for prejudgment interest are two separate matters; the latter does not automatically flow from the former.

In *Andrade v. State,* 448 A.2d 1293 (R.I. 1982), this Court held: "It is \* \* \* the general rule that a statute waiving sovereign immunity, which is also in derogation of common law, must be strictly construed and whatever right of recovery is to be ascertained against the state must be expressly mentioned in the waiver of the immunity statute." *Id.* at 1294 (citing *Brown University v. Granger,* 19 R.I. 704, 708, 36 A. 720, 721–22 (1897)); *see also Donnelly v. Town of Lincoln,* 730 A.2d 5, 10 (R.I.1999); *Reagan Construction Corp. v. Mayer,* 712 A.2d 372, 373 (R.I.1998). The text of § 36–5–7 reveals no mention of any right to prejudgment interest among the benefits inuring to a possessor of veteran's status. In *Andrade,* 448 A.2d at 1295, this Court held that the Tort Claims statute (G.L.1956 § 9–31–1), which rendered the state liable in tort in the same manner as a private citizen, allowed for awards of damages only, and not for prejudgment interest on those damages. We reasoned that "[h]ad the [L]egislature intended to expose the state treasury to the additional financial burden of prejudgment interest it could have so provided easily." *Andrade,* 448 A.2d at 1295. Here, we find no authority—neither express nor implied—for the addition of prejudgment interest to back pay awarded under § 35–5–7.

Mr. Russell would have this Court follow the "analytic path" toward prejudgment interest that he contends we began clearing in *Pellegrino.* But our decision in *Pellegrino* is conspicuously bereft of any discussion of prejudgment interest, and, regardless, this Court previously has held that providing for the addition of interest to awards of damages against the state is a legislative function, not a judicial one. *Andrade,* 448 A.2d at 1295 (citing *Fosbre v. State,* 76 Wash.2d 255, 456 P.2d 335, 336 (1969)). Absent an express statutory provision to the contrary, the doctrine of sovereign immunity insulates the state from paying prejudgment interest. *Reagan Construction Corp.,* 712 A.2d at 373.

## IV

### Conclusion

Based on the foregoing analysis, we hereby affirm the judgment insofar as it declares that Mr. Russell is entitled to veteran's status and that the DOA was responsible for placing him in a position of similar grade within the state services. We vacate and reverse, however, the judgment insofar as it declares an ongoing duty of the DOA to place Mr. Russell in the state services. We also vacate and reverse the judgment's allocation of liability against Channel 36. We remand this case to the Superior Court, and we direct that judgment be entered against the DOA, awarding compensation to Mr. Russell for his lost income from April 20, 1993, until July 29, 1996, without interest. We affirm the judgment in all other respects.